## UNITED STATES v. HART.

(District Court, E. D. Pennsylvania. February 22, 1897.)

**1. VIOLATION OF NEUTRALITY LAWS—MILITARY EXPEDITION—REV. ST. § 5286.**

Rev. St. § 5286, creates two offenses: (1) Setting on foot, within the United States, a military expedition, to be carried on from thence against the territory or dominion of any power, etc., with whom the United States are at peace; .(2) providing the means for such an expedition, as, for instance, means for transportation.

**2. SAME—PROVIDING MEANS, ETC.**

To justify a conviction of preparing or providing means for such a military expedition, it must be proved (1) that a military expedition was organized in this country, and (2) that defendant, in the district of his trial, provided means for it, as charged, with knowledge that it was such an expedition.

**3. SAME—"MILITARY EXPEDITION" DEFINED.**

A military expedition, in the meaning of the statute, comprehends any combination of men, organized in this country, provided with arms and ammunition, to go to a foreign country, and make war on its government. If the men have combined and organized here, though in a rudimentary, imperfect, and inefficient way, voluntarily agreeing to submit themselves to the orders of such persons as they have selected, this is sufficient. It is not necessary that they shall have been organized according to military regulations, or uniformed, drilled, or prepared for efficient service; nor that arms shall be carried on their persons here, or on their way; but only that they shall have been provided for use when occasion requires. And it is immaterial whether the expedition intends to make war as an independent body, or in combination with others in the foreign country.

**4. SAME—INDIVIDUALS GOING ABROAD TO ENLIST.**

It is lawful for men, many or few, to leave this country as individuals, without combination or organization here, to go abroad, even by the same vessel, with the purpose of enlisting with a body of insurgents to fight against a foreign government; and it is immaterial that the vessel also carries arms, as merchandise, which are to be carried on shore in packages, as merchandise, by the men, who so intend to enlist. And the transportation of such persons, knowing their intent, constitutes no offense.

**5. SAME—PROVIDING TRANSPORTATION.**

If defendant, knowing that an expedition is an unlawful military expedition, has provided means, in the district of his trial, to carry it from the United States to an island over which the United States has jurisdiction, as one stage of the journey, with knowledge of its final destination, he is guilty.

**6. SAME—SECRECY AND MYSTERY IN VOYAGE—INSTRUCTIONS.**

The court will not instruct the jury that secrecy and mystery in the departure of the vessel, in the placing of men and arms upon her, are not of themselves evidences of criminality, and are as consistent with a lawful as

an unlawful enterprise, and are not inconsistent with the mere landing of contraband of war on a foreign shore. This subject presents no question of law for the court, but is one of fact for the jury alone.

7. SAME—PRESUMPTION OF INNOCENCE—REASONABLE DOUBT.

The defendant is entitled to all reasonable presumptions in his favor; and if the jury find that all the evidence and circumstances relied on by the government to show guilt, when taken together, are as compatible with the theory of innocence as with the theory of guilt, it would constitute a situation of reasonable doubt, and require an acquittal.

This was an indictment against John D. Hart, under Rev. St. § 5286, for beginning or setting on foot in the United States a military expedition or enterprise, and also for providing and preparing in this country the means for such an expedition, to be carried on from thence, against the territory or dominions of the king of Spain, a prince at peace with the United States.

James M. Beck, U. S. Atty., and Francis F. Kane, Asst. U. S. Atty. John F. Lewis and William W. Ker, for defendant.

BUTLER, District Judge (charging jury): Gentlemen of the jury, the trial of this case has occupied a good deal of time. No more, however, in the judgment of the court, than its importance and the numerous facts involved, required. It has been well and ably tried by counsel on both sides, and, what is equally agreeable to the court, it has been tried in excellent temper. I would be glad if I could submit it to you without further detention, but the numerous points presented will necessitate the expenditure of a greater length of time in submitting it than the court usually occupies. I bespeak your very earnest attention.

The defendant is indicted under section 5286 of the Revised Statutes of the United States, which reads as follows:

"Every person who within the territory or jurisdiction of the United States begins or sets on foot or provides or prepares the means for any military expedition or enterprise to be carried on from thence against the territory or dominion of any power, prince or state or of any colony, district or people with whom the United States are at peace, shall be deemed guilty of a high misdemeanor."

As you observe, the statute creates two offenses, the one setting on foot, within the United States, a military expedition; and the other, providing means for it, as, for instance, means for transportation. Although the defendant is indicted for both offenses, the government is pressing a conviction of the latter only. The case is thus simplified. To justify a conviction it must be proved that a military expedition was organized in this country; and that the defendant provided means here, in Pennsylvania, for assisting it on the way to Cuba, as charged, with knowledge that it was such an expedition. Thus you see two questions are presented for consideration, first, was such an expedition organized in this country? Second, did the defendant provide means for it, here, with knowledge of the facts, as charged?

In passing on the first question it is necessary that you shall understand what constitutes a military expedition, in the meaning of the statute. For the purposes of this case it is sufficient

to say that any combination of men, organized in this country, to go to Cuba and make war upon its government, provided with means,—with arms and ammunition,—(this country being at peace with Cuba,) constitutes a military expedition. It is not necessary that the men shall have been drilled, or put in uniform, or prepared for efficient service, nor that they shall have been organized according to the regulations which ordinarily govern armies. It is sufficient that they shall have combined and organized in this country as a body, to go abroad, and as such make war on the foreign government, having provided themselves with means to do so. If they have thus combined and organized it is not necessary that the arms shall be carried upon their persons here, or on their way; it is sufficient that arms have been provided for their use when occasion requires. It is unimportant that the organization is rudimentary, imperfect, and inefficient; it is enough to meet the requirements of the statute that the men have united and organized with the purpose and object stated; voluntarily agreeing to submit themselves to the orders of such person or persons as they have selected. In the nature of things the organization must be voluntary and imperfect. Obedience to leaders or officers selected here, could not be enforced. The men would be subject to no legal obligation and could not be compelled to obey—at least, until the expedition has left our shores, and the circumstances have become such that they are no longer free agents, but for want of legal protection have become subject to the will of such leaders, supported by the majority of their fellows. Nor is it important whether the expedition intends to make war as an independent body or in combination with others in the foreign country.—If men go, without such combination and organization, to volunteer as individuals in a foreign army, they do not constitute a military expedition, organized here; and the fact that the vessel carrying them under such circumstances, also carries arms as merchandise, is not important.

The defendant has asked the court to charge you as follows:

"(1) It is entirely lawful for any number of men to leave the United States together, with intent to go to Cuba and there join the Cuban army and fight against the Spanish government, provided the men do not in the United States combine and organize themselves into a military body under some leadership for that purpose, and are not supplied with arms and ammunition or munitions of war for their own personal use; and the transportation of such body of men, knowing their intention, does not constitute any offense within the meaning of our statute."

This point is fully answered by what I have already said. It is lawful for men, many or few, to leave this country with intention to volunteer in the Cuban army, provided they have not combined and organized in this country, as previously described; and the transportation of such individuals would not constitute an offense against the statute.

"(2) It is no offense against the laws of the United States to transport arms and ammunition or munitions of war to Cuba, whether they are to be used in war against the Spanish government or not; and it is no offense to transport such

arms and munitions of war to Cuba, for the use of the Cuban army against the Spanish government, and with the intention thereby to aid and assist the Cuban army."

This is affirmed. Although a part of the statement may be open to question, the circumstances of this case do not call for questioning it, and it is therefore affirmed as written.

"(3) It is no offense against the laws of the United States to transport persons intending to enlist in the Cuban army to fight against the armies of the king of Spain, and upon the same ship to transport arms and munitions of war carried in boxes as merchandise, provided such persons do not in the United States combine and organize themselves under some military leadership for that purpose, and provided the arms and ammunition so transported are not intended for their use, and the intention of the men to enlist when they get to Cuba would not make unlawful an expedition which is otherwise lawful."

This point is affirmed, reminding you in this connection, of the importance of remembering the court's previously stated definition of the term "military expedition."

"(4) Even if the jury find from the evidence that the men who were on board the Laurada did go to Cuba, and did land there the arms and ammunition that had been on board that vessel, yet, if their intention was to land the arms rather than use them, the defendant cannot be convicted as indicted unless he knew that the men intended to fight with the arms against the Spanish government."

This contains nothing that is not covered by what has been said. I will repeat, however, that the defendant cannot be convicted, unless it is proved that when he started the Laurada out from Philadelphia, (if he did start her out) he knew that the expedition was military, such as I have described. Taking arms to, and landing them in, Cuba, is not of itself an offense against our laws.

"(5) If the jury find from the evidence that the men who came on board the Laurada acted as porters or stevedores to handle the arms and ammunition in the packages on the voyage, or to transport the packages on shore, even if those men had the intention of ultimately joining the Cuban army, the defendant must be acquitted."

This point is fully answered by what has been already said. Of course, if the men did not go organized to fight, but simply to handle and land the cargo of arms and other stores, they did not constitute a military expedition.

"(6) It is the duty of the government to prove, beyond a reasonable doubt, that the men taken on board the Laurada had previously combined and organized themselves into a military body, for the purpose of going to Cuba to join the Cuban army and fight against the Spanish government, and that the arms and ammunition were not merely merchandise intended for some other person, but were to be used by the very same men who were on board the Laurada for the purpose of making war in Cuba against the Spanish government, and that the defendant, knowing the expedition to be an unlawful one, did, in the Eastern district of Pennsylvania begin it, or set it on foot or provide or prepare the means for it; and if the government has failed to prove any of these facts conclusively to the satisfaction of the jury, and beyond a reasonable doubt, the jury must find the defendant not guilty."

While I doubt the accuracy of this point in one or two particulars, I affirm it, nevertheless, in view of the facts of the case, or rather the evidence, and direct the jury to follow it, bearing in mind, however, that if the men had organized in this country to go

to Cuba and fight, a strong presumption arises that the arms taken along were taken for their use, to the extent they needed arms, in the absence of evidence to the contrary.

"(7) Even if the jury should find that this was a military expedition they must also find before they can convict the defendant that he knew of its illegal character at the time the Laurada sailed from this district; and the fact that the defendant had some connection with the Laurada, either as agent for the owner, or its charterer, or as president of the J. D. Hart Company, would not be sufficient and conclusive evidence of guilt as to warrant his conviction."

All that is material in this point, and can be affirmed, has been answered, and will, no doubt, be answered again in the course of the charge.

"(8) The mere fact that the defendant knew that men and arms were to be taken on board the Laurada both to be carried together to the Island of Navassa, is not sufficient to convict him, and the transportation of the men and the transportation of the arms and ammunition in boxes from one point in the United States to the Island of Navassa, which is another point within the jurisdiction of the United States is not a violation of law."

Everything stated in this point which should be affirmed, is fully covered by what has already been said. I will, however, repeat that if the defendant had knowledge that the expedition was unlawful, as charged, and he provided the means, here, in this district, to carry it to Navassa, on its way to Cuba, knowing that the latter was its destination, he is guilty of the offense charged. It is not necessary that he should provide the means for carrying it to Cuba. If he provided means here for carrying it any part of the journey, with knowledge of its destination, and of its unlawful character, he is guilty.

"(9) Even if the defendant knew that these men and these arms were to go to, or be transshipped at Navassa, that does not raise a presumption that the defendant knew that they were to be taken from thence to Cuba, and were to be used by these men to fight against the Spanish government."

I do not find anything in this point that has not been sufficiently answered. Of course, as before stated, it is necessary to prove that the defendant had knowledge that the expedition was military and was going to Cuba, to justify a conviction.

"(10) There is no evidence whatever that the defendant provided or prepared the means for transshipping the men and arms from Navassa to Cuba, and transporting the men and arms to Navassa alone, is not a violation of the statute. To convict the defendant the jury must believe beyond all reasonable doubt that the defendant actually knew that the arms and ammunition were to go together to Cuba and that the men intended to use the arms to fight against Spain."

This point has been fully answered in so far as it can be affirmed.

"(11) Secrecy and mystery in the departure of the Laurada, in the placing of the men upon her, of the arms upon her, and her avoiding other vessels, and taking a circuitous route to Navassa, are not of themselves evidences of criminality and are just as consistent with a lawful as with an unlawful enterprise, and are not inconsistent with the mere landing of contraband of war upon the Island of Cuba—a thing not against the laws of the United States."

The subject involved in this point is one for the jury alone. It has been fully discussed by counsel on both sides, and the jury

must pass on the weight that should be given to the circumstances here referred to. The point does not present a question of law for the court, but one of fact, which has been fully considered by counsel, and must be passed upon by the jury. As the jury has observed, the defendant contends that the evidence here invoked by the government justifies a belief that the object of the expedition was simply to carry arms to Cuba, not a military expedition which would be an offense against the laws of this country, though the cargo would be contraband of war and liable to confiscation there. The defendant's counsel argues that all the suspicious circumstances cited by the government are as consistent with that supposition as with the charge of the government that this was a military expedition. The matter is one of fact for you and not for the court.

"(12) The defendant is entitled to all reasonable presumption in his favor; and if the jury find that all the evidence and circumstances relied on by the government to show guilt, when taken together, are as compatible with the theory of innocence, as with the theory of guilt, it would constitute a situation of reasonable doubt, and the jury should find the defendant not guilty."

This is true. The point is affirmed. If all the circumstances cited by the government in this connection are as consistent with a belief of innocence as they are with the government's position and charge of guilt, of course, you will necessarily disregard them. There must be a clear preponderance of inference from these circumstances against the defendant, to entitle them to consideration. Where the circumstances of a case are as consistent with a presumption of innocence as of guilt they cannot be used as evidences of guilt. That is true as a legal proposition, but it will be for you to say whether the circumstances referred to and in part relied upon by the government, the circumstances of suspicion and secrecy, are as consistent with a belief of innocence in the prisoner as a belief of guilt.

"(13) The defendant is entitled to the benefit of all doubt or doubts arising from the evidence or from the application of the law to the evidence, and if such doubt arises or exists in the minds of the jurors, it is their duty to find the defendant not guilty."

This seems to add nothing to the point just read, and is affirmed. It is no more than saying that the government must make out a clear case. Not a case that is proved beyond possibility of mistake; because no case is ever so proved; but a case which thoroughly satisfies the minds of the jury. It means that and nothing more. If the jury is not fully satisfied, but doubts, the prisoner is always entitled to the benefit of the doubt, and must be acquitted. Where the minds of the jury are fully convinced, there is no doubt such as the law recognizes, and in such case it is the duty of the jury to convict.

"(14) Under all the facts and circumstances and evidence in the case, the jury must find the defendant not guilty."

I disaffirm this point.

To avoid misunderstanding, which might arise from reading the numerous points, I will repeat what I said at the outset respecting the law:

To justify a conviction it must be proved that a military expedition was organized in this country; and that the defendant provided means here, in Pennsylvania, for assisting it on the way to Cuba, as charged, with knowledge that it was such an expedition. Thus you see two questions are presented for consideration, first, was such an expedition organized in this country? Second, did the defendant provide means for it with knowledge of the facts as charged?

In passing on the first question it is necessary that you shall understand what constitutes a military expedition within the meaning of the statute. For the purposes of this case it is sufficient to say that any combination of men, organized here, in this country, to go to Cuba, and make war upon its government, provided with means, (with arms and ammunition) this country being at peace with Cuba, constitutes a military expedition. It is not necessary that the men shall have been drilled, or put in uniform, or prepared for efficient service, nor that they shall have been organized according to the regulations which ordinarily govern armies. It is sufficient that they shall have combined and organized in this country as a body, to go abroad, and as such make war on the foreign government, having provided themselves with means to do so. If they have thus combined and organized it is not necessary that the arms shall be carried upon their persons here, or on their way; it is sufficient that arms have been provided for their use, when occasion requires. It is unimportant that the organization is rudimentary, imperfect and inefficient; it is enough to meet the requirements of the statute that the men have united and organized with the purpose and object stated; voluntarily agreeing to submit themselves to the orders of such person or persons as they have selected.

Your first inquiry therefore will be, was the expedition which was taken on board the Laurada off Barnegat, and carried to Navassa Island, in sight of Cuba, a military expedition, within the meaning of these terms, as I have defined them, set on foot in this country, to make war against the government of Cuba? That the destination of the expedition was Cuba does not seem open to reasonable doubt, though this, as well as all other facts in the case, must be decided by you. The people of the Island of Cuba, or a part of them, are engaged in war against their government. Several of the men composing the expedition said, if the evidence is believed, and that, of course, is for you, that Cuba was their destination, and that they were going there to fight the Spanish; and when transferred to the Dauntless at Navassa they went in that direction. The men, according to the testimony, were principally Cubans.—Was the expedition, however, military, such as I have instructed you the statute contemplates? In other words, had the men combined and organized before leaving this country, and provided themselves with arms, as before described, for the purpose of going to Cuba to make war against the government? They came to the Laurada in a body, apparently acting from a common impulse, as by preconcert. The arms and other military stores came at the same time, though from New York. The men immediately went to work, transferring the

arms, ammunition and other military stores, from the schooner on which they came, to the Laurada, under the orders of one or more of their number. On the way to Navassa they continued to work about this cargo, opening boxes, assorting ammunition and making sacks from canvas brought for the purpose, as the witnesses described, under the orders of Captain Sutro, who, the witnesses say, conferred with and received orders, or appeared to receive orders, from General Roloff. When approaching Navassa, three of the men, wishing apparently to desert, if the testimony is believed, and that is a question for you, withdrew from the others and hid themselves in a part of the ship where they supposed discovery might be avoided; whereupon, as I understand the testimony, and you will judge whether I am right or not, General Roloff had them sought for, brought out and sent upon the Dauntless with the other members of the expedition. If this latter statement, respecting the desertion of these men, or attempted desertion, hunting them up, bringing them out, and requiring them to go, is true, (and you must judge whether it is or not) it shows that the men were not at that time, at all events, free agents, but were subject to orders which they could not disobey. From these circumstances and from all the evidence bearing on the subject, you must determine whether the men had combined and organized as I have described, in this country, to go to Cuba as a body and fight, or were going as individuals subject to their own wills, with intent to volunteer in the insurgent service there, if they should see fit to do so, on arriving. You must judge from the evidence whether the men had combined, organized and consented to the government of one or more of their number here, in this country, to go to Cuba and make war upon the Spanish government, or whether they were going individually, each on his own account, with liberty to volunteer or not, as they saw fit, when they reached Cuba.

If you do not find that they had so combined and organized before leaving this country, then they did not constitute a military expedition, and the defendant must be acquitted. If, on the contrary, you find that they had so combined and organized in this country, you must next determine whether the defendant provided means for their transportation, not the whole way, but to Navassa. It is not necessary that he should transport them to Cuba, as I have said; if he provided means for their transportation to Navassa, on their way to Cuba, and made this provision here, in Pennsylvania, with knowledge of the character of the expedition and of its destination, he is guilty. The transportation was made by the Laurada. That is an undisputed fact. That somebody here provided her for this service, seems clear, though this question, as other questions of fact, I repeat, is for you. It seems to be beyond room for controversy that somebody here provided the Laurada for that service, and provided her with stores and extra boats. I say it appears so to the court, but still you are not bound by what the court thinks of the evidence. The fact is for you. She started from the port of Philadelphia, taking on here, if the witnesses are believed,

an unusual supply of coal for her alleged voyage, and an unusual supply of other stores. After clearing for San Antonio, she surrendered this clearance, taking another for a coastwise trip to Wilmington; and upon her arrival there immediately took a clearance for Port Antonio again. After passing down the river 20 miles further, she anchored and awaited the arrival of small boats brought down from Camden, on an order given in Philadelphia. She then proceeded to the breakwater and out to sea; but instead of going on a direct course to San Antonio she turned northward and went to the point off Barnegat, where she took on the men, arms, ammunition and other military stores before alluded to. She then proceeded, by the route described, to Navassa, where she transferred the men and other cargo to the Dauntless, together with the boats, or a part of them, taken on down the Delaware. It further appears, as her first officer, Rand, testifies, that her captain pointed out to him on the chart before leaving Philadelphia, the location off Barnegat as their next objective point after passing the breakwater. When she got there she took on the cargo, under circumstances which seem to leave no room for doubt that she expected it. Now, gentlemen, you must judge from these circumstances, and all the testimony relating to the subject, whether it is not reasonably clear that the Laurada and her supplies, including extra boats, were provided here, in this district, expressly to carry the expedition subsequently taken on off Barnegat. If they were so provided you must next determine whether it is proved that the defendant, Hart, made this provision. The vessel was in the service, at the time, as it would seem, of the John D. Hart Company, of which he is president and manager. Who else, or whether anybody else is in the company does not appear, so far as I remember. If there is testimony showing that anybody else is in the company you will remember it. There may be. I remember no such testimony. It is clear, however, according to the testimony, that he was the president of the company, occupied the office and managed its business. The evidence if believed, and it is uncontradicted, shows that the defendant gave several orders respecting the vessel about this time, when she came in before this trip, and when she was going out. Among these orders, was one, if not two, respecting her clearance; it also shows that he directed supplies to be put on board, that he took part in employing her crew, and that while the order to overtake her down the Delaware with extra boats, was not signed by him, nor anybody else, the tug boatman, Smith, usually employed by the John D. Hart Company, who had taken the Laurada out and turned her down the river that day, to whom this order for extra boats was delivered unsigned, executed it, and presented his bill for this service to Mr. Hart, I believe the next day, or soon after, and that Mr. Hart tore it up, did not hand it back, saying he knew nothing about the matter. It was, however, paid a day or two later, by the hands of some one whom the witness says was unknown to him. That Mr. Hart knew that the Laurada was going to the point off Barnegat to take the men on board would seem clear, if the witnesses are

believed, because they testify that he procured the Fox and sent the men on her to the point where they met the Laurada. If this latter statement is true, the inference seems irresistible that he knew the Laurada was going there for the men. From these circumstances and from all other evidence relating to the subject, and with a recollection of what counsel have said, you must determine whether the defendant, here in Philadelphia, provided this vessel and her supplies for the purpose of carrying the expedition to Navassa, on its way to Cuba. If you do not find he did, you will acquit him. If, on the contrary, you find he did you will next pass to the only remaining question in the case: Did he know that the expedition was a military expedition, as charged, when he provided the means for its transportation? To satisfy you he did, the government points to what it calls the suspicious circumstances attending the fitting out of the vessel, her clearances, and voyage from this port to the point off Barnegat. What weight these circumstances should have in deciding the question of knowledge on his part is entirely for you. The government argues that the object was to deceive the officers of the United States, which the defendant could have no object in doing if he did not believe he was violating its laws. On the other side, it is urged for the defendant that it is just as reasonable to believe that the object of these circumstances called suspicious, was simple to deceive the Spanish authorities and Spanish agents hereabouts. You must say whether this position of the defendant is a reasonable one or is not. The government further points, in this respect, with a view of showing knowledge in the defendant of the character of the expedition, to the fact that the defendant had intimate relations, if the testimony is believed, with the men comprising the expedition; that he forwarded most of them from Atlantic City to the point of embarkation; that he knew who were going, those with military titles as well as those without; that he knew arms and other war material were to be taken on with the men, and must have understood the character of the expedition. If he sent the vessel, the Laurada, to the point off Barnegat, the inference would seem to be entirely reasonable that he understood at that time that she was to take these men, because if the testimony is believed he sent the men there, the principal part of them, and that he knew she was to take the military stores, because the vessel took them as if she had previous orders. The vessel was not surprised in finding, so far as appears, that military stores were to be taken; they were taken as matter of course, just as the men were. You have heard and must consider the answer the defendant's counsel have presented to this contention of the government that the defendant, Hart, had knowledge when the Laurada went out from here of the character of the expedition; and from all the evidence bearing on the question, you must determine whether it is proved that the defendant, here furnished the means of transportation for the expedition, with knowledge at the time that it was military, as before described. If he did not, he is not guilty. If he did, he is guilty.

In conclusion, I repeat, if the expedition was a military one, as charged, and the defendant here in Philadelphia provided the means for its transportation, with knowledge that it was a military expedition, he is guilty; otherwise, he is not.

He is entitled to the benefit of any reasonable doubt that may exist, on a careful and impartial examination of the evidence. If your minds are not fully convinced of his guilt he must be acquitted. On the other hand, if your minds are so convinced, he must be convicted. No suggestions of prejudice against or sympathy for him can be allowed to influence your verdict. Your duty and the public interests, as well as the defendant's rights, require that the case shall be decided exclusively on the testimony you have heard here.

I repeat this case has been tried with a great deal of care, most ably, as I think, by the counsel on both sides, with such a degree of good temper as is best calculated to reach a just result; and it is now with you to determine how it shall be decided. I suppose a citizen is never called to the discharge of a higher duty than that of assisting in the administration of justice as a juror. To listen to anything else than the evidence heard from the witness stand, the arguments of counsel and the charge of the court would be to fail in discharging this important duty, and to show yourselves unworthy of the confidence reposed in you. I want you to be thoroughly impressed with the importance of the case and the importance of deciding it according to the evidence. All parties must be satisfied with such a result.