VERNON v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1906.)

No. 2,239.

1. CRIMINAL LAW—WRIT OF ERROR—REVIEW—EXCEPTIONS.

Assignments of error cannot be reviewed on a writ of error in a criminal case, where no exceptions were saved at the trial to the matters complained of in such assignments.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 2656.]

2. SAME—CIRCUMSTANTIAL EVIDENCE—SUFFICIENCY.

Circumstantial evidence is insufficient to warrant a conviction in a criminal case unless it is such as to exclude every reasonable hypothesis but that of guilt of the offense charged, and cannot be reconciled with the theory of innocence.

[Ed. Note—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1259–1262.]

3. BRIBERY—GOVERNMENT OFFICERS—EVIDENCE.

In a prosecution for alleged bribery of a government officer in violation of Rev. St. § 5451 [U. S. Comp. St. 1901, p. 3680], evidence *held* insufficient to warrant a finding that defendant made any promise or offer, or gave any money or other valuable thing to such officer in order to effect his official action.

4. CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE—PROOF OF CIRCUMSTANCES.

Where circumstantial evidence is relied on to establish defendant's guilt of an offense, the circumstances must be proved, and cannot themselves be presumed.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 1260.]

5. SAME—VENUE—PROOF.

Under Const. Amend. 6, providing that in all criminal prosecutions the accused shall enjoy the right to a speedy trial by an impartial jury of the state and district wherein the crime shall have been committed, a conviction cannot be sustained where the evidence, so far as it showed the

commission of an offense, indicated its commission in districts other than that in which the trial was had.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1277, 1278.]

In Error to the District Court of the United States for the Eastern District of Missouri.

James H. Harkless (Charles S. Crysler and Clifford Histed, on the brief), for plaintiff in error.

David P. Dyer, for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. The defendant was indicted for violation of section 5451, Rev. St. [U. S. Comp. St. 1901, p. 3680]. There were four indictments, each of them containing three counts. By order of the court all the indictments were consolidated and tried at one time. As the defendant was, by direction of the court, acquitted on one of the indictments and on the third count of all the indictments, it is only necessary to consider the first two counts in the three indictments, in which the jury returned verdicts of guilty. As the three indictments are identical except as to the dates and locality of the sites selected, and the second count only differs from the first in charging a promise of money to Charles L. Blanton, a copy of the first count of one of the indictments will be sufficient to show clearly the issues involved. That count charges:

"That J. B. Vernon, whose Christian name is to the grand jurors aforesaid unknown, on the 1st day of August, in the year 1902, in the Northern Division of the Eastern Judical District of Missouri, and within the jurisdiction of said court, did unlawfully, feloniously and corruptly offer and give a large sum (the exact amount thereof being to the grand jurors aforesaid unknown) of the lawful money of the United States to one Charles L. Blanton, who was then and there, as he the said J. B. Vernon then and there well knew, a person acting for and on behalf of the United States in an official function, under and by authority of a department of the government, to wit, the Treasury Department of the United States, with the intent then and there of him the said J. B. Vernon to unlawfully, feloniously and corruptly influence the action of the said Charles L. Blanton on a matter then and there pending before him in said official function as aforesaid, that is to say, in making examination of and reporting and recommending to the Secretary of the Treasury a site for a United States post office at Kirksville, Missouri, contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States."

One of the other indictments charges the offer and payment of money to influence the action of Blanton in the examination and recommendation of a site for a post office at Columbia, Mo., and the other at Moberly, Mo. Kirksville and Moberly are both within the jurisdiction of the court, while Columbia is in another district, the Western District of Missouri.

Eleven errors are assigned in the assignment of errors; but as no exceptions were saved at the trial to any of the matters complained of except those set forth in the first and fourth assignments, none other can be reviewed by this court. United States v. Breitling, 20 How.

252, 15 L. Ed. 900; Tucker v. United States, 151 U. S. 164, 14 Sup. Ct. 299, 38 L. Ed. 112; Lindsay v. Turner, 156 U. S. 208, 15 Sup. Ct. 355, 39 L. Ed. 399; Kansas & A. V. Ry. Co. v. Dye, 70 Fed. 24, 16 C. C. A. 604; Drexel v. True, 74 Fed. 12, 20 C. C. A. 265. The assignments properly before us relate solely to the refusal of the court to direct a verdict in favor of the defendant on all the counts of the consolidated indictments. The gist of the offense charged in the indictments is the promise, offer or giving of money to Charles L. Blanton, who was then a person acting for and on behalf of the United States, for the purpose of unlawfully influencing his action on a matter then and there pending before him in his official function. No matter how reprehensible the conduct of the defendant might have been, under the indictments there could be no conviction unless there was substantial evidence justifying a finding by the jury that he had offered, given or promised to Blanton money for the purposes in the indictment set out. There is nothing in the statute under which he was indicted forbidding Vernon from persuading or influencing Blanton to select the sites he recommended to the end that he (Vernon) may receive a fee from the owners of the sites. It is no violation of this statute to take compensation from owners to present their sites to any officer of the government and to portray and plead their eligibility and desirability, provided he did not promise, offer or give to such officer a bribe for the purpose of unlawfully influencing his action. Was there substantial evidence to show these facts? In view of the verdict of the jury, it must be assumed that they disbelieved the explanations and denials of the defendant and Blanton. The jury, being the triers of the facts and the sole judges of the credibility of the witnesses, had a right to do that, and this cause must therefore be determined upon the evidence introduced by the government.

As there was no direct evidence to establish the fact that the defendant made any promise or offer or gave any money or other thing of value to Blanton, but the conviction was secured solely upon circumstantial evidence, the question to be determined now is whether this evidence was of such a nature as to warrant a submission of it to the jury. Circumstantial evidence warrants a conviction in a criminal case, provided it is such as to exclude every reasonable hypothesis but that of guilt of the offense imputed to the defendant; or, in other words, the facts proved must all be consistent with and point to his guilt only and inconsistent with his innocence. The hypothesis of guilt should flow naturally from the facts proved and be consistent with them all. If the evidence can be reconciled either with the theory of innocence or of guilt the law requires that the defendant be given the benefit of the doubt and that the theory of innocence be adopted. People v. Bennett, 49 N. Y. 144; United States v. Babcock, 3 Dill. 581, Fed. Cas. No. 14,487; United States v. Hart (D. C.) 78 Fed. 868, 873, affirmed in Hart v. United States, 84 Fed. 799, 28 C. C. A. 612; United States v. McKenzie (D. C.) 35 Fed. 826; People v. Ward, 105 Cal. 335, 38 Pac. 945; Asbach v. Chicago, etc., Ry. Co., 74 Iowa, 248, 37 N. W. 182; Smith v. First National Bank, 99 Mass. 605, 97 Am. Dec. 59.

In United States Fidelity & Guaranty Company v. Des Moines National Bank (decided at the present term of this court) 145 Fed. 273, Judge Van Devanter, who delivered the opinion of the court, held that:

"A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature and are so related to each other that it is the only conclusion that can fairly or reasonably be drawn from them. If the facts are consistent with either of two opposing theories, they prove neither."

The learned trial judge, in overruling the motion of the plaintiff in error made at the close of the government's case to direct a verdict of acquittal, after reviewing all of the evidence except that of the witness Kelley, hereinafter referred to, said:

"Now, that, in and of itself, would not reach, it seems to me, the requirement of the law here as to certainty so as to be in itself sufficient evidence to connect the defendant with what is the gist of this action—the payment of money or the promise of money to Blanton. So that, as we went along in the trial, I was impressed that there was a failure to connect this defendant with the accusation as made against him; but the connection is made, in the opinion of the court, in the testimony of witness Kelley in the interview which Kelley had with Vernon in the city of St. Louis on the 29th or 30th day of August, 1902. I was particular to understand that testimony and requested last night, so that I might give it the consideration which I would be able to, to have the same transcribed from the reporter's notes."

The testimony of Kelley to which the learned judge thus refers was that having gone to St. Louis at the request of Vernon, they had a conversation in relation to the selection of a site in his town, and in speaking of what took place he testified:

"When I met him (Vernon) in the lobby of the hotel, he, by way of explaining his reasons for getting me down there, said that he had been interested himself in the various selections for government buildings and that he had found that there was a number of cases where the sites were satisfactory for the purpose and through his inside information that he had been in possession of, that he had been able to buy and speculate in surrounding property and had sold that at a profit through that knowledge and that the money that he had made out of it, that he—I can't remember just the words, but the sense was—the substance of it was that he had been able to give the fellows that had helped him to make this money and that had given the information, and still leave him a nice sum. That was the substance of the statement, as near as I can remember it."

In another place further on Kelley testified:

"I said to him, 'Now, suppose I go back there and get these options (I wanted to draw him out) and possibly tie up some money of some friends of mine and myself and the thing don't come out that way, I will be left to hold the bag, won't I?' He says, 'Don't you fret about that. If I say it goes, it goes. You can depend on that.'"

These statements testified to by Kelley as having been made to him by plaintiff in error, the court held, in connection with the other circumstantial evidence in the case and especially the fact that every one of the sites which are the subject of the different indictments now before the court were favorably reported on by Blanton, were sufficient to justify the jury to draw the inference that plaintiff in error meant that the money he received from the owners of sites selected

was by him divided with Blanton. The case was, therefore, submitted to the jury entirely upon the presumption and inference drawn from these statements testified to by Kelley. Is the presumption of guilt the only one to be adduced from these facts? The testimony of Schwabe, one of the witnesses introduced on the part of the government, showed that the fee secured by plaintiff in error for procuring the selection of the site at Columbia was divided by Vernon with the witness, and the testimony of Dr. Andrews, another one of the government's witnesses, also shows that Vernon paid him a part of the money which he received from the owners of the site selected at Harrison, Ark. Both of these witnesses testified that this money was paid to them for assisting plaintiff in error in getting options and getting him into communication with the owners of the different sites.

Kelley, in his testimony in relation to that same conversation which he had with plaintiff in error at St. Louis, testified that he was told by Vernon:

"That through inside information he had been able to buy or get options on some land surrounding other locations, and in that way had been able to make considerable money, and said that he, of course, had made some money, but he believed in dividing it with the fellows that had made it possible for him to make the money, and after doing that he still had a nice net sum."

In another place, in repeating this conversation, Kelley testified:

"He said that from the inside information he had been able to make considerable money out of it, and that the fellows that gave him this information that made it possible—I think that is the words he used—that after giving them something it left him a nice sum. He said he had speculated in property surrounding sites, that he couldn't remember just the words, but the substance of it was that he had been able to give the fellows that had helped him to make this money, that had given him the information, and still leave him a nice sum."

On the part of the government it is insisted that these statements made to Kelley constituted substantial evidence that Blanton was the man with whom Vernon had divided; while the defendant maintained that those words related to the real estate agents and parties who had assisted him in getting options and introducing him to the owners of the sites. Assuming that the jury would be justified to draw either of these inferences, the rule of law is that in case of conflicting presumptions that which assumes innocence must be adopted. Persons v. State, 90 Tenn. 291, 16 S. W. 726; McArthur v. State, 59 Ark. 431, 27 S. W. 628; State v. McDaniel, 84 N. C. 803; Sharpe v. Johnson, 22 Ark. 79. It is equally well settled, not only in criminal cases, but also in civil cases, that whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed. U. S. Fid. & Guar. Co. v. Des Moines National Bank, supra; United States v. Ross, 92 U. S. 281, 284, 23 L. Ed. 707; Manning v. Insurance Company, 100 U. S. 693, 698, 25 L. Ed. 761.

In the latter case the court say:

"We do not question that a jury may be allowed to presume the existence of a fact in some cases from the existence of other facts which have been proved,

but the presumed fact must have an immediate connection with or relation to the established fact from which it is inferred. If it has not, it is regarded as too remote. The only presumptions of fact which the law recognizes are immediate inferences from facts proven."

In the case at bar there is not a scintilla of direct evidence that there was any money ever paid or promised to be paid by Vernon to Blanton. The fact that in all of these instances the sites recommended by the defendant were selected is, no doubt, a strong circumstance to show that he had some influence with Blanton; but in the absence of direct testimony that this influence was obtained by bribery, the presumption of law is that it was exercised without the commission of a crime. The legal presumptions are all in favor of the innocence of the accused and of the dutiful official action of Blanton. The fact that Kelley testified on two occasions that Vernon in that conversation alluded to "fellows" would rather indicate that he referred to Schwabe and Andrews, two men who testified that they received a part of the money paid to Vernon, than to Blanton.

But aside from these facts, there is not a scintilla of evidence that, if money was promised, offered or paid to Blanton by Vernon, it was done in the Eastern District of Missouri. The sixth amendment to the Constitution of the United States provides:

"In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." etc.

Under this constitutional provision, the venue is as material as any other allegation in the indictment, and the burden to prove it rests upon the government. Even if it be conceded that there was sufficient evidence to show that there was a bribe, promised or given by Vernon to Blanton, it was error to submit the cause to the jury in the absence of evidence that the offense was committed in that district. While the venue may be proved by circumstantial evidence (Wharton Crim. Ev. § 108; Commonwealth v. Costley, 118 Mass. 2; Bloom v. State, 68 Ark. 336, 58 S. W. 41; State v. Chamberlain, 89 Mo. 129, 1 S. W. 145), a failure to prove the venue is fatal (Wharton on Crim. Law, § 601; Frazier v. State, 56 Ark. 242, 19 S. W. 838; Jones v. State, 58 Ark. 390, 24 S. W. 1073). Even if it was permissible to draw the inference of Vernon's having promised or paid a bribe to Blanton from the statements made by Vernon to Kelley, the inference that the crime was committed in the district in which Vernon was tried can only be drawn from the other inference. That presumptions cannot be based on presumptions is well settled. United States v. Ross, 92 U. S. 281, 283, 23 L. Ed. 707; Globe Accident Ins. Co. v. Gerisch, 163 Ill. 629, 45 N. E. 563, 54 Am. St. Rep. 486; State v. Lackland, 136 Mo. 26, 37 S. W. 812; Simpson v. State, 56 Ark. 8, 17, 19 S. W. 99.

In United States v. Ross, in speaking on this subject, it was said:

"These seem to be nothing more than conjectures. They are not legitimate inferences even to establish a fact, much less are they presumptions of law. They are inferences from inferences; presumptions resting on the basis of another presumption. Such a mode of arriving at a conclusion of law is gen-

erally, if not universally inadmissible. No inference of fact or of law is reliably drawn from premises which are uncertain."

Not only is there no evidence to show that the offenses, if committed at all, were committed in the district in which the trial was had, but the only evidence that throws any light on that subject would indicate that, if the offense was committed, it must have been committed outside of the district. In every instance Vernon came to the place where the site was to be selected and made his arrangements some time before Blanton reached there. He came to Columbia two months before Blanton; to Kirksville several weeks before, and to Moberly 15 or 20 days before Blanton. If there was any conspiracy between them, these facts would indicate that the promise to pay must have been made before Blanton came to the district. The same facts appear as to the payments made by the different site owners to Vernon. As to the Columbia site, the evidence shows that the payment of the first $500 to Vernon was made in Centralia and the arrangement for the payment of the money by the site owners was made in Columbia, both of these cities being in the Western District of Missouri, while the last $750 seems to have been paid at Moberly. As to the Kirksville site, the arrangements were made at Kirksville, and $300 of the money was paid to him there, but before Blanton had arrived there, and $500 was sent to him at Memphis, Tenn. In reference to the Moberly site, the evidence shows that $200 was paid to him at Moberly 15 or 20 days before Blanton came there, and nothing indicates that at that time Blanton was in the district. The only place where any money was paid to Vernon for his services in procuring the selection of a site when Blanton was in the same city was in Nevada, and that is outside of the Eastern District of Missouri.

As there is no substantial evidence to warrant a finding that the offense was committed, and a total failure of proof as to the venue, the defendant was entitled to a peremptory instruction of acquittal, and, for failing to give this instruction the cause must be reversed and remanded, with directions to grant a new trial.