## UNDERWOOD v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. July 20, 1920.)

No. 3379.

1. **Post office ⚖49—Evidence held not to show fraudulent use of mails.**

 A count charging that defendant, pursuant to a scheme to defraud, sent through the mails an application for employment at a salary of $2,500 and travel expenses, in which he made false statements and representations in respect to his age, character, qualifications, and present salary, conceding that it charged an offense, *held* not supported by the evidence, which showed that the obtaining of the salary was not the object of the application.

2. **Post office ⚖48 (4)—Indictment for using mails to defraud, insufficient.**

 A count charging that defendant, pursuant to a scheme to defraud the United States, sent through the mails an application for employment, for the purpose of obtaining, by virtue of the position which he sought, exemption from military service, *held* not to charge an offense, where it alleged no facts showing that defendant was a person subject to the Selective Draft Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2019a, 2019b, 2044a–2044k), and where the position for which he applied would not, as matter of law, exempt him from selection under such act.

3. **Criminal law ⚖564 (1)—In prosecution for using mails to defraud, place of mailing letter held not proved.**

 Under an indictment for using the mails to defraud, proof that defendant resided in the city where a letter was alleged to have been mailed

*held* insufficient alone to sustain such allegation, or to prove the venue as laid.

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Criminal prosecution by the United States against John Allen Underwood. Judgment of conviction, and defendant brings error. Reversed.

Charles E. Belcher, of Columbus, Ohio, and Sherman T. McPherson, of Cincinnati, Ohio (Sherman T. McPherson, of Cincinnati, Ohio, and Belcher & Connor, of Columbus, Ohio, on the brief), for plaintiff in error.

Stuart R. Bolin, Sp. Asst. Atty. Gen. (Stuart R. Bolin, of Columbus, Ohio, on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The plaintiff in error was convicted in the United States District Court for the Southern District of Ohio on both counts of an indictment charging him with using the United States mail in the furtherance of a scheme to defraud. The defendant filed a general demurrer to each count of the indictment, which demurrer was overruled by the court, and exceptions noted.

[1] The first count charges in effect that John Allen Underwood devised a scheme or plan for the purpose of obtaining through false and fraudulent representations, from the Young Men's Christian Association, $2,500 and travel expenses; that in furtherance of this fraudulent intent he made false statements relating to his personal character, age, education, church affiliations, experience in business, and in social and charitable work, and that he fraudulently represented that Edgar A. Todd had signed a certain paper writing purporting to recommend him to the Young Men's Christian Association, and answering certain questions in reference to his character, habits, education, and ability for charitable and social work; that John Allen Underwood did on or about the 1st day of December, 1917, place and cause to be placed in the post office of the United States, situated in the state of Ohio, city of Piqua, county of Miami, within the Western division of the Southern Judicial district of Ohio, and within the jurisdiction of the District Court of that judicial district, to be sent and delivered by the post office establishment of the United States, a certain letter, together with the false statement in writing, signed by him, and the written recommendation purporting to have been signed by Edgar A. Todd. These several papers are copied in full in this count of the indictment. The letter is as follows:

"December 1, 1919.

"Mr. Raymond P. Kaighn, Nat'l War Work Council, Y. M. C. A., New York City—Dear Mr. Kaighn: Please pardon the delay in reply to your letter of November 20th, which has been due to my absence in Washington, looking after this company's business with the government in cantonment heating. I am returning herewith the information blank you sent me, completely filled out as you request. You will also find the only available photograph of myself inclosed. Please see that this is returned to me as soon as possible. I

am confident that my experience and information can be made of some use and value in association war work, and I hope you will give my application the fullest measure of consideration.

"Yours sincerely,        •   J. A. Underwood.
"JAU   ESF"

Next follows a copy of the written recommendation purporting to have been made by Edgar A. Todd. This consists. of questions and answers,· undoubtedly on a blank prepared by the Young Men's Christian Association for this purpose. The heading is as follows:

"Concerning: John Allen Underwood, 220 Green St., W., Piqua, Ohio.
"Filled in by: Edgar A. Todd, 726 N. Downing St., Piqua, Ohio."

Then follow the questions and answers. The answers are extremely favorable to Underwood, and unequivocally recommend him to the managing officers of the Young Men's Christian Association for honesty, ability, integrity, experience, character, religious affiliation, religious and social activities, and capacity to fill any important executive or administrative office.

The other paper, claimed to have been written by Underwood himself, is under the heading "Application Blank," and consists of questions and answers. The answers to these questions are substantially all favorable to the applicant, particularly in reference to his education, habits, health, business ability, church affiliations, and experience in promoting educational and social activities. In response to the inquiry as to his present salary the answer is "$7,500." As to age the answer is, "31 years." The answer to question 11, "What salary would you accept in present emergency· work?" is "$2,500 and travel expenses." Then in parenthesis the following: "Turn over, page 2." On page 2 is the further answer to question 11:

"I am not taking any interest in the financial compensation of Assoc. War Work. I am willing to make any sacrifice in income in order to be of service. I have indicated the amount ($2,500 and traveling expenses) on the other side, because I figured I will require about that amount to pay insurance, taxes, and living expenses. I am willing to accept whatever the Assoc. believes is fair, and what it is accustomed to pay."

In answer to question 35, "Give names and addresses of three other persons whom we may ask as to your experience and qualifications for this work," the following appears:

"Edgar A. Todd, Treas. Atlas Underwear Co., Piqua, Ohio. Otto A. Simon, 313 N. Downing St., Piqua, Ohio. Paul J. Weaver, 410 De Balivuere, St. Louis, Mo. [Over.]".

Later in the paper is a further answer to questions 34 and 35 as follows:

"Any bank in Piqua can give you unquestioned reference as to my integrity, honesty, and reputation. The gentlemen whom I have mentioned know me personally and have for years."

The indictment further avers that Edgar A. Todd did not then, or at any other time, make any such recommendation, either orally or in writing, and that the answers of Underwood to the questions in the application blank were untrue in reference to his age, the salary

he had been receiving, his church membership, the amount of goods he had marketed yearly for the period of eight years, his membership in organizations promoting social and religious activities, his prior connection with and understanding of the retail business, and his management of a department store, and that he was not, as set forth in this statement, qualified for service in the Young Men's Christian Association activities in war work, and that he did not at the time set forth possess the qualifications which he claimed he did possess for such work.

It is claimed on behalf of Underwood that this count does not state with sufficient particularity the facts upon which the charge in the indictment is based. On the contrary, it would seem that it does fully state every fact and circumstance upon which the government expects to rely in the prosecution of this case. The more important question presented by the demurrer to this count is whether the facts as stated therein constitute the offense charged. Counsel for the government has, in his brief, fairly and clearly stated the natural and necessary conclusion to be reached from the reading of this count in the indictment. His statement in that respect is as follows:

"It must be admitted that the $2,500 per year and traveling expenses was not to be the direct result of the alleged pretenses, but was to be compensation for services under the contract for the employment which he was attempting to secure by such pretenses."

This statement concedes that the primary purpose of Underwood was to secure employment, and that the salary and traveling expenses were merely incident thereto, and that in furtherance of his purposes to secure such employment he made the false and fraudulent statements charged in the indictment. It is claimed, however, that the immediate purpose in the mind of Underwood necessarily included a purpose and intent on his part to defraud the Young Men's Christian Association out of the compensation to be paid for his services under the contract of employment. There is no averment in this indictment that Underwood did not intend to perform any services, or that whatever services he might perform by reason of such employment would have been of no value or of materially less value to the Young Men's Christian Association than $2,500 per year and traveling expenses.

It is claimed on behalf of plaintiff in error that, in the absence of such averments, the immediate purpose of the fraudulent scheme and false representation must control the construction of this count of the indictment, and proof that the fraud was practiced for the purpose of securing employment cannot be accepted as proof of the offense charged in the indictment, viz. to defraud the Young Men's Christian Association out of $2,500 per year and traveling expenses, without averment and proof that such employment would necessarily have accomplished such result.

In many cases, perhaps usually, the intent to defraud the employer out of the salary to be paid would be so far incidental to and necessarily flowing from the intent to defraud the employer into giving employment that the two would merge, and proof of guilt of the latter

would show guilt of the former. The present case is peculiar, in that the facts recited in detail in the indictment, and the inferences necessarily drawn from the omission of statements naturally to be expected, compel the conclusion that the pleader regarded the getting of the money as the gravamen of the fraud, but stated facts which at least strongly indicate that it was not. In so far as there may be doubt about the conclusion that the facts stated are inconsistent with the guilt charged, an equivalent result is reached by consideration of the evidence, which puts it beyond any doubt that to get the money of the Y. M. C. A. was not Underwood's purpose. In any event, the motion for a directed verdict of not guilty upon the first count should have been granted, and since it is not suggested that upon this feature of the case there is or can be any evidence for the government which was not given on the first trial, and there seems to be no practical difference to Underwood between this course and the sustaining of the demurrer to the indictment, we do not decide whether or not the demurrer should have been overruled.

If it should be thought that the indictment is open to more than one construction, as to whether it charges intent to defraud in getting employment or intent to defraud in getting a salary, this doubt is removed by the charge of the court. The question submitted to the jury was sharply and clearly the latter one—the intent to defraud the Y. M. C. A. out of $2,500 in money.

[2] The second count charges that the defendant did devise and intend to devise a scheme and artifice to defraud the United States government, and that in furtherance of such scheme he used the United States mail for the purpose of forwarding to the Young Men's Christian Association the false and fraudulent statements, representations, and promises contained in the letter, the recommendation purporting to be signed by Todd, and the application, copied into the first and second counts of this indictment, and that the purpose of the defendant in making such false representations was to defraud the United States by reason of his employment by the Young Men's Christian Association, thus exempting himself from military duty under the Selective Service Law Act May 18, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2019a, 2019b, 2044a–2044k).

At the time alleged in the indictment the Selective Service Law contained no provision whatever exempting an employé of the Young Men's Christian Association from its terms and provisions. Had Underwood succeeded in securing employment with the Young Men's Christian Association through any fraudulent scheme or artifice, the fact that he was so employed would not then in any way have operated to exempt him from military duty under the provisions of that act or in any way to hinder or delay the United States government in raising an army and navy for its defense.

It is claimed on the part of the government that it is not important that such result would not have been possible under the law, if in fact Underwood believed it was possible to secure exemption in this way, and that under this indictment the only thing important is the fraudulent purpose and intent of Underwood, regardless of whether such

purpose was possible of accomplishment. There is a clear distinction between cases of this character and one depending upon facts for the success of a scheme or purpose to defraud. Weeber v. United States (C. C.) 62 Fed. 741.

In cases of that character the success of the plan depends upon the intelligence or lack of intelligence of the public or of the particular individual sought to be defrauded. In cases of this character the law is fixed and certain. The government could not be defrauded of its right to select Underwood for military duty by reason of his employment by the Young Men's Christian Association. No presumption obtains that the government or that the officers charged with the enforcement of the Selective Service Act did not fully understand the law under which they were acting.

On the other hand, no presumption obtains that Underwood did not know the law. Every citizen is presumed to know the law of the land in which he lives, and ignorance of the law is no excuse for an offense against its terms and provisions. Certainly the reverse of this proposition must be true; that is to say, that a citizen will not be held guilty of an offense he could not commit because of the fact that on account of his ignorance of the law he believed that an act perfectly lawful was an offense against the law. In other words, the presumption that all citizens know the law of the land in which they live obtains for the defense of the accused as well as for his conviction.

This count does not allege that the defendant was a male person between the ages of 21 and 30 years, or that he was a citizen of the United States or a person not an alien enemy who had declared his intention to become such citizen; so it wholly fails to state that he was liable to military duty under the Selective Service Act. In the case of Ruthenberg v. United States, 245 U. S. 480, 483, 38 Sup. Ct. 168, 62 L. Ed. 414, it was held, in a prosecution under the law requiring male persons between the ages of 21 and 30 years to register, that it was necessary to state that the delinquent was a male person between those ages, but not necessary to allege that he was a citizen of the United States or that he had declared his intention to become such citizen; but that was upon the theory that "these matters go only to the liability to military duty and not to the duty to register." In this case the question is as to the liability of the defendant to military duty, for, unless he was liable to such duty, he could not be guilty of any fraud in attempting to evade the same.

It is also claimed that the verdict is not sustained by the evidence. There is practically no conflict of evidence in this case. It is clear that the defendant did not deliver to the post office establishment of the United States the recommendation purporting to have been filled in by Edgar A. Todd, nor was it inclosed in the letter of December 1, 1917, with the application blank. On the contrary, the proof is positive and undisputed that this recommendation blank reached Mr. Todd's home in his absence; that his wife and daughter opened the same and wrote therein the answers to the questions; that these answers were without any consultation with Underwood, except as he was asked in reference to one or two questions regarding his business

position; that these answers were filled in after he had left the Todd home that evening; and that after they were filled in the letter was mailed by Miss Todd. Of course, it is not important who mailed it, if the defendant caused it to be mailed; but the evidence claimed to support that inference is unsatisfactory.

[3] There is no evidence whatever, aside from the mere presumption that arises from the place of defendant's residence, that the letter of December 1, 1917, and the application blank were mailed at any post office located in the Western division of the Southern judicial district of Ohio. There is some evidence in the record that the letters were received by the Young Men's Christian Association through the mail, but none whatever as to where the letters were actually mailed. The envelope containing the same had been destroyed. The defendant could not be convicted on the presumption that he mailed this letter at his usual place of residence, unless there is some evidence showing that he was in the city of Piqua, Ohio, during the time between the date it was written and its receipt in New York; and there is none. On the other hand, there is some evidence that the letter was not written at Piqua, Ohio, at least not in the office of the company in whose employ he then was. A witness for the government testified that she was employed as a stenographer in the office of that company, and the initials in the lower left corner of the page are the stenographer's initials, but that she did not remember a stenographer with such initials in the employ of the company at that time. This evidence would at least tend to show that the letter was not written by the defendant in his office at Piqua, but must have been dictated to some other stenographer, either in Piqua or at some other place. The evidence also showed that in the discharge of his duty as sales manager for the Favorite Stove & Range Company he was required to travel to many places outside the district. The evidence wholly fails to prove the venue as laid in the indictment. Vernon v. United States, 146 Fed. 121, 126, 76 C. C. A. 547; Moran v. United States (C. C. A. 6) 264 Fed. 768, decided April 6, 1920.

In what we have said we have assumed that an attempt to get employment by making false statements, even though accompanied by an intent to render faithful service, would constitute the scheme or artifice to defraud contemplated by section 215 of the Criminal Code (Comp. St. § 10385), and we likewise have assumed that the existence of such a scheme might be predicated upon a mere intent to violate a public criminal statute in a way that did not carry fraud upon or injury to any individual. Neither of these matters is involved in the present case, in the view that we have taken of other questions, and we do not intend to indicate any opinion upon either of them.

For the reasons above stated the judgment of the District Court is reversed and remanded, with directions to sustain the demurrer to the second count of the indictment, and for further proceedings according to law.