## JOHNSON v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. January 16, 1925.)

No. 6072.

**Intoxicating liquors ☞236(11)—Evidence held insufficient to sustain conviction for feloniously selling whisky.**

Evidence *held* insufficient to sustain conviction for feloniously selling whisky.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Charlie Johnson was convicted of feloniously selling whisky, and he brings error. Reversed and remanded, with instruction to grant new trial.

B. C. Trice, of Pawhuska, Okl., for plaintiff in error.

W. A. Maurer, U. S. Atty., and James A. Ingraham, Asst. U. S. Atty., both of Oklahoma City, Okl.

Before SANBORN and KENYON, Circuit Judges, and BOOTH, District Judge.

SANBORN, Circuit Judge. Charlie Johnson, the defendant below, was indicted, tried, and convicted of feloniously selling whisky to Ben Andrews on or about June 11, 1920, in Osage county, Okl. At the close of the evidence at the trial counsel for the defendant moved the court to instruct the jury to return a verdict in his favor on the ground that the evidence was insufficient to sustain a verdict against him. The court denied the motion; defendant's counsel excepted and assigns this ruling as error.

The only evidence for the government was the testimony of one Cooper that about 3 o'clock in the morning of June 11, 1920, he saw the defendant at Pawhuska, Okl., and a certified copy of the testimony of one Ben Andrews taken at the preliminary hearing on June 14, 1920, before United States Commissioner Mellott. Ben Andrews had died before the commencement of the trial. That certified copy shows that Commissioner Mellott acted as prosecuting attorney before himself; that he conducted the direct examination of Andrews. Andrews testified that he did not pay Johnson any money. Asked if he talked to Johnson about intoxicating liquor, he said Johnson said he might look around. Asked if he made a statement to the chief of police that he gave defendant an amount of money, he testified, "I didn't intend to say it." On cross-examination he testified that he had the conversation with the defendant about the 10th or 11th

of June; that the defendant did not deliver to him any whisky and that he did not pay him any money; that he paid "this fellow"; that he did not know whether the defendant sent "this fellow" to him or not; and that he did not know whether the defendant had anything to do with the transaction. On redirect examination by the commissioner, he testified that he told the chief he paid "the boy" for it. Then the commissioner's examination proceeded in this way:

"Q. You swore in the affidavit that you purchased two quarts of whisky from Charlie Johnson and paid $25 a piece. A. I paid that boy. * * *

"Q. Did you buy two quarts of whisky and give $25 each? A. I might have. I spent a lot of money.

"Q. You gave $25 to Charlie Johnson? A. I might have.

"Q. I want you to say yes or no. A. I gave him the money."

Andrews was then again examined on cross-examination, on redirect examination, and on recross. In these examinations he testified that these transactions were on the 10th or 11th of June, 1920; that he was then drunk and had been drunk for about a week. There was no other substantial testimony against the defendant.

For the defense the defendant testified that he never sold Ben Andrews any whisky; that he was not in Pawhuska but was in Bartlesville from Wednesday night, June 9, 1920, until the night of Saturday, June 12, at the garage of Mr. and Mrs. Dawson getting his car repaired; that Bartlesville was 35 miles from Pawhuska and he never saw Ben Andrews at any time about the 11th of June, 1920. N. Lewis testified that he had a talk with Ben Andrews about the middle of July, 1920, and Andrews told him that he did not buy any whisky of the defendant. Mrs. Dawson testified that she resided at Bartlesville; that she and her husband ran a garage and repair shop for automobiles there; that on the night of Wednesday, the 9th of June, 1920, the defendant drove into her garage and left his car; that on Thursday their mechanic worked on the car and that with the exception of a few minutes Thursday morning the car remained in the garage all day Thursday, all day Friday, and all day Saturday; that she saw the defendant around the garage at different times from Thursday morning until late Saturday night; that she made a charge on her books of the work that was done; and that she knew positively that the defendant

3 F.(2d)—14

did not leave Bartlesville until Sunday morning. Mrs. Turner testified that the defendant took her to ride in Bartlesville on the morning of Thursday or Friday and that he was in Bartlesville from Thursday the 10th to Saturday night the 12th.

The testimony of these witnesses for the defense is clear, reasonable, and substantial. On the other hand, the testimony of Ben Andrews that he was on June 10 and 11, 1920, and had been for a week, drunk, is not challenged and the remainder of his testimony leaves no doubt that while he was in that condition statements were secured from him which he would not have testified to at the preliminary hearing if he had not been coerced so to do by the attitude and questions of the commissioner and the fact that his previous statements had been so procured. A copy of the testimony of a deceased witness taken before the issues for trial have been settled is far from being of the highest and most persuasive character, and where that testimony shows, as in this case, that the witness was drunk at the times of the transactions to which it relates, and that when he gave his testimony he contradicted himself and was easily led or forced to testify as the examiner wished him to, first on one side and then on the other, his testimony is not of so substantial a character that a defendant should be deprived of his liberty upon it in the face of clear and unimpeached evidence to the contrary. Vernon v. United States, 146 F. 121, 123, 76 C. C. A. 547; Union Pacific Coal Co. v. United States, 173 F. 737, 740, 97 C. C. A. 578; Sullivan v. United States (C. C. A.) 283 F. 865, 868; Wright v. United States, 227 F. 855, 857, 142 C. C. A. 379; Willsman v. United States (C. C. A.) 286 F. 852, 856; Grantello v. United States (C. C. A.) 3 F.(2d) 117, opinion filed November 12, 1924. The court below should have granted the motion to instruct the jury to return a verdict for the defendant.

Let the judgment below be reversed, and let the case be remanded to the court below with instructions to grant a new trial.