## VERMONT et al. v. UNITED STATES. †

(Circuit Court of Appeals, Eighth Circuit. December 4, 1909.)

No. 2,854.

1. INTERNAL REVENUE (§ 16*)—TAXES—OLEOMARGARINE—STATUTES—CONSTRUCTION—"ANY PERSON."

Oleomargarine Act 1886 (Act Aug. 2, 1886, c. 840, § 3, 24 Stat. 209 [U. S. Comp. St. 1901, p. 2229]), as amended by Act May 9, 1902, § 2, 32 Stat. 194 (U. S. Comp. St. Supp. 1909, p. 864), imposes a tax on manufacturers of oleomargarine, and declares that every person who manufactures oleomargarine for sale, and "any person" that sells, vends, or furnishes oleomargarine for use and consumption of others, except to his own family table without compensation, who shall add to or mix with such oleomargarine any artificial coloration that causes it to look like butter, shall be held to be a manufacturer of oleomargarine within the act. *Held*, that, the words "any person" are not limited to licensed wholesale or retail dealers in oleomargarine, but are comprehensive enough to embrace any or all persons, whether licensed dealers or not, selling, vending, or furnishing oleomargarine to which he has added coloring matter to represent butter.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 16.*]

2. INTERNAL REVENUE (§ 16*)—TAXES—OLEOMARGARINE—"MANUFACTURER."

Oleomargarine Act 1886 (Act Aug. 2, 1886, c. 840, § 3, 24 Stat. 209 [U. S. Comp. St. 1901, p. 2229]), as amended by Act May 9, 1902, § 2, 32 Stat. 194 (U. S. Comp. St. Supp. 1909, p. 864), defines a manufacturer of oleomargarine as any person who sells, vends, or furnishes oleomargarine for use or consumption by others who shall add to or mix any artificial coloration so as to make it resemble butter. *Held*, that the actual selling, vending, or furnishing of oleomargarine for use and consumption by others is not one of the necessary components of a manufacturer as contemplated by such act, so as to require proof of actual selling, vending, or furnishing of some of the product to constitute the offense; the term "manufacturer" as so used being construed to mean one engaged in the business of selling, vending, or furnishing oleomargarine for consumption of others.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 16.*

For other definitions, see Words and Phrases, vol. 5, pp. 4347–4358.]

3. INTERNAL REVENUE (§ 47*)—OLEOMARGARINE—OFFENSES—COLORATION—EVIDENCE.

Evidence *held* sufficient to warrant a conviction of defendants as manufacturers of oleomargarine for mixing coloring matter therewith to represent butter without having paid the federal tax and obtained the required license, and for selling, vending, or furnishing oleomargarine for use and consumption of others.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 47.*]

4. INTERNAL REVENUE (§ 40*) — OLEOMARGARINE TAX — DESTRUCTION OF STAMPS—OMISSION—OFFENSES.

The oleomargarine act of 1886 (Act Aug. 2, 1886, c. 840, § 13, 24 Stat. 211 [U. S. Comp. St. 1901, p. 2232]) provides that, whenever any stamped package containing oleomargarine is emptied, the person in whose hands the same is shall destroy the stamps thereon, and any person who willfully neglects or refuses to do so shall be fined, etc. *Held* that, in order to constitute an offense under such section, the package must have been stamped, denoting the payment of the tax, it must have been emptied of its tax paid contents and been in defendant's possession in its emptied condition, and defendants must have neglected or refused to destroy the stamp during such possession.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 40.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied March 1, 1910.

5. INTERNAL REVENUE (§ 47*) — OLEOMARGARINE — PACKAGES — STAMPS —OMIS-
SION TO DESTROY.

Evidence *held* to sustain a conviction of willfully refusing to remove the stamps from oleomargarine packages on removal of the contents therefrom, in violation of the oleomargarine act of 1886 (Act Aug. 2, 1886, c. 840, § 13, 24 Stat. 211 [U. S. Comp. St. 1901, p. 2232]).

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 47 *]

Carland, District Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Missouri.

Roy Vermont and another were convicted of violating the oleomargarine law, and they bring error. Affirmed.

The plaintiffs in error were indicted in one count of the indictment for carrying on the business of manufacturing oleomargarine without having first paid the special tax therefor in violation of section 3 of the oleomargarine act of 1886 (Act Aug. 2, 1886, c. 840, 24 Stat. 209 [U. S. Comp. St. 1901, p. 2229]). as amended by section 2 of the act of May 9, 1902 (Act May 9, 1902, c. 784, 32 Stat. 194 [U. S. Comp. St. Supp. 1909, p. 864]). The statute as amended reads as follows: "Manufacturers of oleomargarine shall pay six hundred dollars. Every person who manufactures oleomargarine for sale shall be deemed a manufacturer of oleomargarine, and any person that sells, vends or furnishes oleomargarine for the use and consumption of others, except to his own family table without compensation, who shall add to or mix with such oleomargarine any artificial coloration that causes it to look like butter of any shade of yellow, shall also be held to be a manufacturer of oleomargarine within the meaning of said act and subject to the provisions thereof."

They were also indicted in six other counts of the same indictment for having in their possession certain empty packages which had contained oleomargarine without having destroyed the stamps which denoted the payment of the tax thereon. They were convicted on each of the counts and now prosecute error.

Walter N. Davis (Horace L. Dyer, on the brief), for plaintiffs in error.

Henry W. Blodgett (Charles H. Daues, on the brief), for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

ADAMS, Circuit Judge (after stating the facts as above). The government undertook to prove under the first count that the defendants were manufacturers of oleomargarine, not by testimony showing that they manufactured it out of the raw material, but that they mixed artificial coloration with the white oleomargarine to make it look like yellow butter.

These two questions of law are relied upon by defendants to secure a reversal of their conviction on this count: (1) That it should have been averred in the indictment and proved at the trial that the defendants were wholesale or retail dealers in oleomargarine; and (2) that it should have been averred and proved that the defendants actually sold, vended, or furnished the particular oleomargarine which they manufactured. The court overruled a demurrer to the count based on these grounds, and that action is assigned for error.

The argument is that the words "any person," which form the subject of the second definition of a manufacturer in the amended act relate exclusively to licensed wholesale or retail dealers in oleomargarine, because such are the only persons who can lawfully sell, vend, or furnish oleomargarine for the use and consumption of others.

If such dealers were the only persons who could sell, vend, or furnish colored oleomargarine, there would be force in this argument, but most obviously such is not the case. The temptation to make the additional profit which would result by evading the payment of the tax of 10 cents a pound imposed by law upon colored oleomargarine naturally appeals more strongly to the dishonest and irresponsible than to the legitimate dealer; and the former would likely be the class Congress was most solicitous to regulate. It must be admitted that it is possible and well within the power of any and all persons to resort to the business of coloring oleomargarine to make it look like butter; and, in view of this possibility, the words "any person" under consideration were doubtless employed by Congress. They are broad and comprehensive and easily embrace any and all persons whether licensed wholesale or retail dealers or otherwise; and by a familiar rule of construction they should be given full force and effect, to the end that the legislative purpose may be subserved. We think there is no merit in this first objection to the indictment.

It is next argued that the language employed in the amended act necessarily requires, not only the adding or mixing of artificial coloration with oleomargarine, but the actual selling, vending, or furnishing of some of the colored product to constitute one "a manufacturer," and that, inasmuch as there was no proof that defendants actually sold, vended, or furnished any of the oleomargarine, which they colored, the conviction cannot stand on the first count. But we cannot give our assent to this proposition. The actual selling, vending, or furnishing of oleomargarine for the use and consumption of others is not one of the substantive and necessary components of a "manufacturer" as there contemplated. . The words, "that sells, vends or furnishes oleomargarine," etc:, rather qualify or limit the subject of the sentence in which they are found. It is not "any person" merely, but "any person that sells, vends or furnishes," etc., that may become a manufacturer by adding or mixing coloring matter. It is not an uncommon use of language to say that one sells or vends fruit, for instance, and to mean thereby not that he has actually made a sale, but that he is engaged in the business of selling or vending fruit.

. We think such is the sense in which Congress employed the words in question, and that the true meaning of the sentence is that any person engaged in the business of selling, vending, or furnishing oleomargarine for the use and consumption of others who shall add or mix with oleomargarine any artificial coloring matter shall be held to be a manufacturer and subject to the provisions of the act.

An interpretation of the act which requires proof that one who confessedly manufactured as a part of his regular business large quantities of oleomargarine to supply the trade has actually sold or disposed of some part of that manufactured product before the process of manufacturing can be considered complete and he be held to the duties

and obligations of "a manufacturer" would not only do violence to the common understanding, but would result in the anomalous situation that one could not be a manufacturer without being, by the same token, either a wholesale or retail dealer. From this it would follow that a mere manufacturer, who is required by section 3 of the oleomargarine act to pay a special tax of $600 as such, would also be required to pay the additional tax imposed by the same section upon either a wholesale or retail dealer, as the case might be, in the manufactured product. We cannot believe that Congress intended by the amendment in question to bring about such incongruous and ill fitting condition of things.

The defendants' next contention is that there was no evidence that they actually added to or mixed any artificial-coloration with oleomargarine, and that the court erred in overruling their demurrer to the evidence offered at the close of the case. This contention in our opinion is also without merit.

The defendants were caught in flagrante delicto. They were found operating a well-equipped oleomargarine factory. In it were tubs filled with colored oleomargarine, cans of coloring matter, aprons and jackets soiled with grease and butter color, and a large number of empty tubs and caddies. Finger marks were discovered upon warm and mushy oleomargarine indicating recent manipulation and mixing, and, while there was no direct proof of the physical mixing of coloring matter with oleomargarine, the uncontradicted facts carried an unmistakable inference that the coloring process was in actual operation on the day the defendants were arrested. It is not deemed necessary to discuss the details of the evidence. It was ample to justify the verdict, notwithstanding the objection last referred to.

It is suggested that there is no evidence tending to show that defendants were engaged in the business of selling, vending, or furnishing oleomargarine for the use and consumption of others, and, for that reason, they are not brought within the contemplation of the oleomargarine act in question, even as interpreted by us. Defendants' counsel neither in their oral argument nor brief made any point of this kind, and we possibly might be excused from considering it. However that may be, the facts just recited and others of similar import are in our opinion inconsistent with the suggestion made. It cannot be well conceived that the defendants were engaged in coloring the large quantities of oleomargarine disclosed by the proof to have been in their possession merely for personal use or personal diversion. They must have had some reasonable purpose for doing it, and nothing is more reasonable than a purpose to dispose of it for the use to which it was specially adapted, namely, general consumption. Rational beings are presumed to intend the natural and reasonable consequences of their acts, and fair inferences from established facts are oftentimes more reliable and persuasive of the truth, especially when intent or purpose is involved, than oral statements concerning them.

The next assignment of error relied upon by the defendants' counsel is that there was no evidence to support the verdict of guilty on the remaining six counts of the indictment. These counts were grounded on section 13 of the original oleomargarine act of 1886 (24 Stat. 211), which reads as follows:

"That whenever any stamped package containing oleomargarine is emptied it shall be the duty of the person in whose hands the same is, to destroy utterly the stamps thereon; and any person who willfully neglects or refuses so to do shall for each such offense be fined not exceeding fifty dollars and imprisoned not less than ten days nor more than six months."

The obvious purpose of this enactment was to prevent fraudulent evasion of the tax of 10 cents per pound imposed upon colored oleomargarine and one-fourth of a cent per pound imposed upon white or uncolored oleomargarine. It should therefore be construed as far as possible to promote rather than defeat the legislative purpose. The facility with which a package could be emptied and refilled with the same or different substance and the natural inclination of the lawless to escape taxation doubtless afforded the motive for enacting this law. There are four elements of the offense charged in these counts: (1) The package must have had a stamp on it denoting the payment of a tax; (2) it must have been emptied of its tax paid contents; (3) it must have been in that emptied condition in the possession of the defendants; and (4) they must have willingly neglected or refused to destroy the stamp while the empty package was in their possession.

We have already called attention in a general way to the character and equipment of the building in which defendants carried on their business. It may now be added that they had no license either for manufacturing or selling oleomargarine at that place; that they did their work secretly, and, when discovered, attempted flight. The proof is ample that they were conducting some illegitimate business, and this included, as we have already shown, coloring of oleomargarine so as to make it resemble yellow butter, and evading the manufacturer's special tax due from them for so doing. With this background or setting in view, we will consider the evidence relied on to support the conviction on the last six counts of the indictment.

It is an uncontradicted fact that oleomargarine, artificially colored to resemble yellow butter, was found in the defendants' possession at their place of business packed in six tubs or packages each bearing a stamp denoting the payment of a tax of one-fourth cent per pound due on white or uncolored oleomargarine. This fact, taken in connection with the fact that the defendants were then actually engaged in coloring oleomargarine, so as to evade the tax, warrants the reasonable inference that the packages had once contained white or uncolored oleomargarine. They bore the stamps indicating in law that such had once been their contents.

It is also undisputed that these same packages at the time of defendants' arrest contained colored oleomargarine. This colored oleomargarine had been substituted for the uncolored which must have been there before. Not only is it reasonable to say that it could not have been so changed without emptying the original contents out of the packages, but there is undisputed evidence that one package carrying the stamp for uncolored oleomargarine found in defendants' place of business at the time of the arrest was empty, and that 60 pounds of uncolored oleomargarine were then found dumped on a printing table in their premises. It is further undisputed that the stamps which were upon these packages had never been destroyed; that those denoting the pay-

ment of a tax of one-fourth of a cent a pound were found intact upon packages containing colored oleomargarine, which was taxable at 10 cents a pound, and that all these things were discovered on premises in possession of the defendants, where they were clandestinely carrying on the illegitimate business of manufacturing oleomargarine without paying the special tax provided by law therefor.

We think these and other facts of like character unnecessary now to be mentioned with the reasonable inferences deducible from them tended almost irresistibly to establish each and every element of the offense charged against the defendants in the last six counts of the indictment, and that the jury was fully warranted in finding them guilty as charged.

This concludes the consideration of the errors assigned and relied upon by defendants' counsel, and results in an affirmance of the judgment of the District Court.

CARLAND, District Judge (dissenting). I am unable to concur in the majority opinion in so far as it holds that there was no error in the ruling of the trial court with respect to the first count of the indictment. In my opinion the count was good as a pleading, not for the reason stated by the majority, but for the reason that, under the allegation that defendants carried on the business of manufacturers of oleomargarine, evidence was admissible to show that defendants were any kind of manufacturers defined by law. In other words, the pleader was not obliged to plead evidence. I dissent from the majority opinion in so far as it holds that the defendant may be convicted under the first count merely upon evidence from which the jury might find that said defendants at a certain time and place mixed with oleomargarine artificial coloration that caused such oleomargarine to look like butter. There is no evidence in the record that the defendant Garrett ever engaged in the business of selling, vending, or furnishing oleomargarine for the use and consumption of others, or that he ever had a license so to do. There is no evidence that the defendant Vermont ever engaged in the business of selling, vending, or furnishing oleomargarine for the use and consumption of others. There is no evidence that either defendant ever sold any oleomargarine colored in the way mentioned in the statute either by themselves or any one else. It is unnecessary to determine on this record whether the words "any person" used in the statute mean a licensed dealer or not. The majority opinion concedes, and the law says, that it must be "any person that sells, vends, or furnishes."

Whether these words be construed to mean licensed dealers, or persons who are engaged in the business of selling, vending, or furnishing unlawfully without license, or whether it means the sale of oleomargarine lawfully or unlawfully by a person who has mixed artificial coloration with oleomargarine, it still remains true that there is no evidence in the record to bring the defendants within either construction. If we are to indulge in presumptions, they must be those of innocence, not of guilt. The defendants were captured in the loft of a barn, on the first floor of which colored oleomargarine was found, together with empty tubs and artificial coloration. On this showing the defendants

were convicted of being manufacturers of oleomargarine by mixing artificial coloration with uncolored oleomargarine.

In my opinion the collection of the revenue does not require nor the due administration of justice permit such a result. The judgment on the first count should be reversed, and a new trial ordered.