MAY et al. v. UNITED STATES.†

(Circuit Court of Appeals, Eighth Circuit. August 19, 1912.)

No. 3,663.

1. INTERNAL REVENUE (§ 47*)—OLEOMARGARINE—LICENSE TAX—OFFENSES—INDICTMENT.

Oleomargarine Act Aug. 2, 1886, c. 840, § 17, 24 Stat. 212 (U. S. Comp. St. 1901, p. 2234), provides that whenever any person engaged in carrying on the business of manufacturing oleomargarine defrauds, or attempts to defraud, the United States of the tax on the oleomargarine produced by him, or any part thereof, he shall forfeit the factory and manufacturing apparatus used by him, and shall be fined and imprisoned. *Held*, that the essential elements of such offense are the engaging in the business of manufacturing oleomargarine, the producing of such substance, and the attempt to defraud the United States, and hence an indictment alleging that defendants on a specified date, being persons engaged in carrying on the business of a manufacturer of colored oleomargarine at a specified place, did knowingly, etc., attempt to defraud the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied November 25, 1912.

United States of a tax imposed on 120 pounds of colored oleomargarine, then and there produced by them, etc., was sufficient without a further allegation that the substance produced had become subject to the tax by having been sold or removed for consumption or sale within section 8.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 141–150; Dec. Dig. § 47.*]

2. INTERNAL REVENUE (§ 47*)—OLEOMARGARINE TAX—ATTEMPT TO DEFRAUD UNITED STATES.

Since Oleomargarine Act Aug. 2, 1886, c. 840, § 17, 24 Stat. 212 (U. S. Comp. St. 1901, p. 2234), making it an offense to attempt to defraud the United States of the tax imposed on oleomargarine, does not declare it an offense to commit the fraud in any particular way, it is an offense if the government is defrauded by any means or method, and hence an indictment charging that defendants, while manufacturers of colored oleomargarine, did fraudulently, etc., attempt to defraud the United States of the tax on a specified quantity of such substance, was not objectionable for failure to charge the manner in which the attempt to defraud was made.

[Ed. Note.—For other cases, see Internal Revenue. Cent. Dig. §§ 144–150; Dec. Dig. § 47.*]

3. INDICTMENT AND INFORMATION (§ 109*)—STATUTORY OFFENSE.

An indictment for a statutory offense, which distinctly and clearly charges every element of the offense and distinctly advises the defendant of what he is to meet at the trial, is sufficient.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 286–288; Dec. Dig. § 109.*]

4. INTERNAL REVENUE (§ 39*)—OLEOMARGARINE ACT—LICENSE TAX—FAILURE TO PAY—OFFENSES—"MANUFACTURER."

Oleomargarine Act Aug. 2, 1886, c. 840, § 17, 24 Stat. 212 (U. S. Comp. St. 1901, p. 2234), providing that any person engaged in carrying on the business of manufacturing oleomargarine, who defrauds, or attempts to defraud, the United States of the tax on oleomargarine produced by him, etc., shall be fined and imprisoned, was applicable to one who did not manufacture white oleomargarine and therefore was not a manufacturer within the definition contained in the original act, but who mixed white oleomargarine with artificial coloration so as to make it look like butter and thereby became a "manufacturer" within the definition as extended by Act Cong. May 9, 1902, c. 784, 32 Stat. 194 (U. S. Comp. St. Supp. 1911, p. 969).

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 97–101, 103–106, 142, 143; Dec. Dig. § 39.*

For other definitions, see Words and Phrases, vol. 5, pp. 4346–4358.]

5. INTERNAL REVENUE (§ 39*)—OLEOMARGARINE—DEFRAUDING UNITED STATES—STATUTES—APPLICATION.

Oleomargarine Act Aug. 2, 1886, c. 840, § 17, 24 Stat. 212 (U. S. Comp. St. 1901, p. 2234), making it an offense for any person engaged in carrying on the business of manufacturing oleomargarine to defraud, or attempt to defraud, the United States of the tax thereon, etc., is not limited to persons who have received a license to manufacture oleomargarine, but includes all persons who carry on the business of manufacturing oleomargarine, who defraud, or attempt to defraud, the United States of the tax thereon.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 97–101, 103–106, 142, 143; Dec. Dig. § 39.*]

6. INTERNAL REVENUE (§ 47*)—OLEOMARGARINE TAX—DEFRAUDING UNITED STATES—EVIDENCE.

In a prosecution for attempting to defraud the United States of the tax on colored oleomargarine, evidence *held* sufficient to sustain a con-

viction, though there was no proof that any witness saw each defendant in the act of mixing coloring matter with white oleomargarine.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 144–150; Dec. Dig. § 47.*]

Sanborn, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Missouri.

Fred D. May and others were convicted of carrying on the business of manufacturing oleomargarine without having paid the special tax therefor, and they bring error. Affirmed.

Henry W. Blodgett (Bates, Blodgett, Williams & Davis, on the brief), for plaintiffs in error.

Charles A. Houts, U. S. Atty.

Before SANBORN and HOOK, Circuit Judges, and WILLARD, District Judge.

WILLARD, District Judge. [1] Plaintiffs in error, Fred D. May, Thomas B. May, William M. Johnson, and E. W. Bailey, were convicted under the second count of an indictment which charged a violation of section 4 of the Oleomargarine Act of August 2, 1886, c. 840, 24 Stat. 209 (U. S. Comp. St. 1901, p. 2229). This section punishes one who carries on the business of manufacturing oleomargarine without having paid the special tax therefor. They were also convicted under the third count, which charged a violation of section 17 of the same act. No objection to the sufficiency of the second count is here urged. It is claimed, however, that the third count is insufficient. This point was raised in the court below by a demurrer.

The third count is as follows:

"That Fred D. May, Thomas B. May, William M. Johnson, and E. W. Bailey, whose Christian name is to the grand jurors aforesaid unknown, heretofore, to wit, on or about the 29th day of November, 1910, within the division and district aforesaid, and within the jurisdiction of the court aforesaid, at No. 3536 Morgan street, in the city of St. Louis, state of Missouri, they, the said Fred D. May, Thomas B. May, William M. Johnson, and E. W. Bailey, whose Christian name is to the grand jurors aforesaid unknown, being then and there persons engaged in carrying on the business of a manufacturer of colored oleomargarine at said No. 3536 Morgan street, in the city of St. Louis, state of Missouri, under the name of the Clayton·Creamery, did then and there knowingly, willfully, fraudulently, and feloniously attempt to defraud the United States of the tax imposed by law upon colored oleomargarine of ten (10) cents per pound on each pound of colored oleomargarine so manufactured, to wit: Ten (10) cents per pound on one hundred and twenty (120) pounds of colored oleomargarine then and there produced by them, the said Fred D. May, Thomas B. May, William M. Johnson, and E. W. Bailey, whose Christian name is to the grand jurors aforesaid unknown."

Section 17 is as follows:

"That whenever any person engaged in carrying on the business of manufacturing oleomargarine defrauds, or attempts to defraud, the United States of the tax on the oleomargarine produced by him, or any part thereof, he

shall forfeit the factory and manufacturing apparatus used by him, and all oleomargarine and all raw material for the production of oleomargarine found in the factory and on the factory premises, and shall be fined not less than five hundred dollars nor more than five thousand dollars, and be imprisoned not less than six months nor more than three years."

The essential elements of the offense defined in section 17 are: (1) That the defendant is engaged in carrying on the business of manufacturing oleomargarine. (2) That he has produced oleomargarine. (3) That he has attempted to defraud the United States. All of these are found in the third count. The claim of the defendants, however, is that before the offense can be committed the oleomargarine produced must have become subject to the tax. They call attention to section 8 of the act, which provides that "upon oleomargarine which shall be manufactured and sold, or removed for consumption or use," there shall be assessed a tax, and they say that the indictment should have alleged that the defendants had attempted either to sell it, or to remove it for consumption, or to remove it for use; and they insist that an allegation of this kind was an essential part of the indictment.

Whatever may be said of this claim when the charge is that the defendant has defrauded the United States, it cannot be sustained when the charge is that the defendant has attempted to defraud the United States. Conclusive evidence might be produced to the effect that a defendant had made plans to construct and operate an illegal factory for the manufacture of oleomargarine, to manufacture it, and to sell it without payment of the tax. It might also be further shown conclusively that, in pursuance of this illegal plan, he had erected a factory and had commenced to manufacture and had actually manufactured oleomargarine with the intent of selling it without paying the tax, but that before he had sold or removed, or attempted to sell or remove, any part of it, his operations were interfered with by the authorities. Can it be said in such a case that he has not attempted to defraud the United States? At least, when a defendant's operations have proceeded so far as to show conclusively that he has produced oleomargarine with the intent to defraud the government out of the tax thereon, there is an attempt to defraud such as is mentioned in section 17, although he has neither sold nor removed nor attempted to sell or remove any of the product.

[2] It is further said with reference to this count that it does not advise the defendant of the manner in which he attempted to commit the fraud, so as to enable him to prepare his defense. It is to be noted that section 17 does not declare it an offense to commit the fraud in any particular way. If it did, then it would be necessary to allege the manner in which the act was done. But as the section stands, it is an offense if the government is defrauded by any means or method. As was said in United States v. Simmons, 96 U. S. 360, on page 364, 24 L. Ed. 819:

"The intent to defraud the United States is of the very essence of the offense; and its existence, in connection with the business of distilling being distinctly charged, must be established by satisfactory evidence. Such in-

tent may, however, be manifested by so many acts upon the part of the accused, covering such a long period of time, as to render it difficult, if not wholly impracticable, to aver, with any degree of certainty, all the essential facts from which it may be fairly inferred."

To have alleged in this indictment how the defendants attempted to defraud the United States would have required a statement of much of the evidence presented at the trial. The count, as it appears, advises the defendants of the time when the act was committed, namely, on November 29, 1910. It advises them where it was committed, namely, at 3536 Morgan street, in the city of St. Louis, Mo. It advises them of the name under which it is claimed they were doing business, namely the Clayton Creamery. It advises them of the amount of oleomargarine produced, namely, 120 pounds.

As to the sufficiency of this count the case is, we think, covered by the case of Armour Packing Company v. United States, 153 Fed. 1, on page 16, 82 C. C. A. 135, on page 150 (14 L. R. A. [N. S.] 400). This court there said:

"It is conceded that, where a crime is a statutory one, the indictment must set forth with clearness and certainty every essential element of which it is composed. It must portray the facts which the pleader claims constitute the alleged transgression so distinctly as to advise the accused of the charge which he has to meet and to give him a fair opportunity to prepare his defense, so particularly as to enable him to avail himself of a conviction or an acquittal in defense of another prosecution for the same offense, and so clearly that the court may be able to determine whether or not the facts there stated are sufficient to support a conviction. (Citing cases.) The indictment in this case pleads the names of the carriers that transported the property, the date and place of the delivery of the goods to the initial carrier and of the receipt of the concession by the shipper, a description of the specific articles shipped, the filed and published rate, the less rate at which the goods were transported, and the amount of the concession, the place of shipment, and the point of destination of the property, and the route over which it was transported. Here were averments of facts sufficient to clearly advise the defendant of the offense with which it was charged, to give it ample opportunity to prepare its defense, to enable it to avail itself of a conviction or an acquittal in the case of another prosecution for the same crime, and to qualify the court to determine whether the facts stated constituted an offense. The particular device by which the concession and transportation were obtained was not an essential ingredient of the offense charged, because the latter might well exist, whatever the device, and whether or not there was one, and hence the indictment portrayed every material element of the crime without an averment of this device. U. S. v. Tozer (D. C.) 37 Fed. 635, 637. The substance of the crime of receiving a rebate or concession under the Elkins act is the solicitation, acceptance, or receipt thereof, whereby property in interstate or foreign commerce is transported at less than the regular rate. The device whereby the receipt and transportation are obtained is not an essential element of the crime, and it is unnecessary to plead it in the indictment."

[3] It is to be observed that the law there under consideration provided that it should be unlawful for any person to receive any rebate or concession, whereby property should, "by any device whatever," be transported at a less rate than that named in the published tariffs, yet the indictment there under consideration did not allege what the device was by which the rebate had been secured. The judgment of this court in that case was affirmed by

the Supreme Court, and the decision of that court is reported in 209 U. S. 56, on page 83, 28 Sup. Ct. 428, on page 436 (52 L. Ed. 681), under the name of Armour Packing Company v. United States. It was there said:

"It is alleged that the indictment is insufficient, in that it fails to set out the kind of device by which traffic was obtained, and of what the concession consisted, and how it was granted. Authorities are cited to the proposition that in statutory offenses every element must be distinctly charged and alleged. This court has frequently had occasion to hold that the accused is entitled to know the nature and cause of the accusation against him, and that a charge must be sufficiently definite to enable him to make his defense and avail himself of the record of conviction or acquittal for his protection against further prosecutions and to inform the court of the facts charged, so that it may decide as to their sufficiency in law to support a conviction, if one be had and the elements of the offense must be set forth in the indictment with reasonable particularity of time, place, and circumstances. And it is true it is not always sufficient to charge statutory offenses in the language of the statutes, and where the offense includes generic terms it is not sufficient that the indictment charge the offense in the same generic terms, but it must state the particulars. United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830. But an indictment which distinctly and clearly charges each and every element of the offense intended to be charged, and distinctly advises the defendant of what he is to meet at the trial, is sufficient.

"And in Ledbetter v. United States, 170 U. S. 606, 612, 18 Sup. Ct. 774, 776 (42 L. Ed. 1162), Mr. Justice Brown, speaking for the court, said: 'Notwithstanding the cases above cited from our reports, the general rule still holds good that upon an indictment for a statutory offense the offense may be described in the words of the statute, and it is for the defendant to show that greater particularity is required by reason of the omission from the statute of some element of the offense.'"

Indictments in some respects similar to this one have been under consideration in the cases of Hardesty v. United States, 168 Fed. 25, 93 C. C. A. 417; Enders v. United States, 187 Fed. 754, 109 C. C. A. 502. The demurrer to the third count was properly overruled.

[4] The evidence at the trial did not show that the defendants manufactured white oleomargarine; they therefore did not come within the definition of a manufacturer contained in the original act. It was proven that they mixed white oleomargarine with artificial coloration, so that it looked like butter. This brought them within the definition of a manufacturer found in the amendment of May 9, 1902, c. 784, 32 Stat. 194 (U. S. Comp. St. Supp. 1911, p. 969). It is claimed by the defendants, inasmuch as when section 17 was enacted the only manufacturer was a person who made white oleomargarine, that that section cannot apply to these defendants who became manufacturers by an act subsequent thereto. There is nothing in this contention. If it were sustained, it would not be necessary for persons who mixed coloring matter with white oleomargarine to pay a license tax of $600 a year. Nor would any of the other sections of the original law, which refer to manufacturers, apply to those who became such under the act of 1902. In order to make such sections applicable, it was not necessary to re-enact them. There is no difficulty in applying the forfeiture provision in section 17 to such a condition as is found in this case.

These defendants had a factory and a manufacturing apparatus, such as it was. They had the raw materials for the manufacture of the new product, namely, white oleomargarine and the coloring matter.

[5] It is further claimed by the defendants that section 17 applies only to persons who have received a license to manufacture oleomargarine, and that these defendants, never having taken out such license, cannot be convicted. To so construe the section would be to add thereto the word "licensed," so that it would read "whenever a licensed person," or to add other words indicating that it was limited to persons who had received such a license as has been mentioned.

If it clearly appeared that it was the intention of Congress to so limit that section, possibly authorities might be found which would support such an interlineation. But a moment's reflection will show that such never could have been the intention of the Legislature. If such were the law, a person who intended to violate section 17 would purposely fail to take out a license as a manufacturer, for in such a case he could not be imprisoned in the penitentiary; he could only be punished for a violation of section 4, the penalty for which is a fine. In Vermont v. United States, 174 Fed. 792, on page 794, 98 C. C. A. 500, on page 502, this court said:

"The temptation to make the additional profit which would result by evading the payment of the tax of 10 cents a pound imposed by law upon colored oleomargarine naturally appeals more strongly to the dishonest and irresponsible than to the legitimate dealer; and the former would likely be the class Congress was most solicitous to regulate. It must be admitted that it is possible and well within the power of any and all persons to resort to the business of coloring oleomargarine to make it look like butter; and, in view of this possibility, the words 'any person' under consideration were doubtless employed by Congress. They are broad and comprehensive and easily embrace any and all persons whether licensed wholesale or retail dealers or otherwise; and by a familiar rule of construction they should be given full force and effect, to the end that the legislative purpose may be subserved."

[6] The evidence was sufficient to convict all of the defendants.

The government's witnesses testified that Thomas B. May, one of the plaintiffs in error, had obtained about a month prior to and possessed on November 29, 1910, a special tax stamp as a retail dealer in colored oleomargarine for the premises 3536 Morgan street in the city of St. Louis; that the business at these premises was conducted under the name of the Clayton Creamery. They further testify that they watched these premises for a period of a week before breaking in on the 29th day of November, 1910; that, at the time they broke in, they had to break down several doors, and when they finally reached the second story of the premises, they there found three of the plaintiffs in error, to wit, Fred D. May, William M. Johnson, and E. W. Bailey. They found on the premises a gasoline stove, around which were piled a number of tubs of oleomargarine in a soft and oily condition. They found oleomargarine in tubs, stored in an ice box. They found a printing table, such as is usually used in preparing butter or oleomargarine in shaping the same in prints from its original contents in firkins. They found paddles, some

galvanized iron tubs, in which colored oleomargarine was found sticking to the sides. They also found, under a trapdoor in the floor, a lot of oleomargarine streaked with coloring matter, and under this same trapdoor they also found an empty can which bore a label upon which was the inscription, "Butter Color, Heller & Merz Co., Aldernay Butter Color, New York, N. Y.," and also another empty can of the same character thrown on top of the ice box.

The testimony of these witnesses further shows that plaintiff in error Tom May, the proprietor, had been seen around said premises at various times for a considerable period, and had been there on every day during the week immediately preceding the raid, but was not, and had not been, there on the morning of the raid; that plaintiff in error Fred D. May usually arrived at said premises about 6 or 6:15 in the morning; that he had been around there every day during the week immediately preceding the raid, and had also been around there frequently for a period of about two years immediately preceding said time; that plaintiff in error Johnson was observed there three different times during the week immediately preceding the breaking in; that he arrived about 7:15 in the morning and would leave about 10:30 or 11 the same morning, and that he had been observed around there on other occasions prior to this time; that Bailey was around there every morning during the week immediately preceding the breaking in, and also during a considerable period preceding this time; that he had been observed taking care of the horses and wagons that were kept on the premises.

It required from 20 to 25 minutes to break into the room upstairs. The demand for admission before breaking in was made in so loud a voice that it attracted the attention of the neighbors in the house next door. While the officers were attempting to force an entrance, the defendants who were inside the building neither said nor did anything. During the time that the officers were watching the premises they observed a number of drivers come in the early morning and depart in wagons loaded with goods.

The facts above stated, with other evidence to which attention has not been called, were sufficient to convict all of the defendants both of the offense of engaging in the manufacture of oleomargarine without paying the tax of $600, and also of the offense punished by section 17.

It seems to be the claim of the defendants that they cannot be convicted unless some witness saw each defendant in the act of mixing coloring matter with white oleomargarine. Such proof was not required. The evidence shows that this unlawful business of coloring oleomargarine was being carried on at this place with intent to sell the product and to defraud the government, and that each one of the defendants knowingly assisted therein. Vermont v. United States, 174 Fed. 792, 795, 98 C. C. A. 500.

The judgment of the court below is affirmed.

SANBORN, Circuit Judge (dissenting). All there is of the charge in the indictment, when it is stripped of its immaterial verbiage, is that the defendants being engaged in the business of a manufacturer

of colored oleomargarine attempted at No. 3536 Morgan street, St. Louis, at a date specified, to defraud the United States out of 10 cents a pound on 120 pounds of colored oleomargarine produced by them. This 10 cents a pound could never become due to the United States on this 120 pounds, and hence the United States could never be defrauded of it by the defendants unless without paying that tax they sold this oleomargarine or removed it for use. 24 Stat. 209, § 8, 2 U. S. Comp. Stat. 2231. The manufacture of colored oleomargarine, either by producing it or by mixing artificial coloring matter with white oleomargarine, could never subject them to liability to pay that tax. This manufacturing might lawfully be done by paying the $600 occupation tax without incurring any liability whatever to pay the poundage tax. Therefore the manufacturing of colored oleomargarine was consistent with innocence of all attempt to defraud the government out of the poundage tax. And no offense is proved or charged by evidence or averment of facts that can be reconciled with the theory of the innocence of the accused unless the charge and the evidence are such as to exclude every reasonable hypothesis but that of guilt. Vernon v. United States, 146 Fed. 121, 123, 76 C. C. A. 547, 549; People v. Bennett, 49 N. Y. 144; United States v. Babcock, 3 Dill. 581, Fed. Cas. No. 14,487; United States v. Hart (D. C.) 78 Fed. 868, 873, affirmed in Hart v. United States, 84 Fed. 799, 28 C. C. A. 612; United States v. McKenzie (D. C.) 35 Fed. 826; People v. Ward, 105 Cal. 335, 38 Pac. 945; Asbach v. Chicago, etc., Ry. Co., 74 Iowa, 248, 37 N. W. 182; Smith v. First National Bank, 99 Mass. 605, 97 Am. Dec. 59.

Read in the light of the act of Congress and of this rule of law, all the facts set forth in the third count of this indictment are consistent with the innocence of the defendants except the bare averment that at the time and place named they attempted to defraud the United States of a poundage tax of 10 cents a pound on 120 pounds of oleomargarine. An averment in a complaint in a civil action that at a certain time and place the defendant defrauded the plaintiff out of $12 that was due him on a specified account, without stating the facts which constituted the defrauding so that the court could determine from the complaint whether or not those facts constituted a fraud, would be clearly insufficient. An attempt to defraud may be made in a thousand ways. Three ways in which the attempt charged in this case might have been made are by selling the colored oleomargarine, by removing it for consumption, and by removing it for use without first paying the tax. Acts which constituted the attempt, means by which the attempt was made, were indispensable ingredients of the attempt, and until they were disclosed by the pleading it seems to me that no facts were set forth from which the court could determine whether or not the facts which the pleader by its silence concealed when it presented the indictment, and which it subsequently attempted to prove, were sufficient to support a conviction, none which advised the defendants of the charge they were to meet and gave them a fair opportunity to defend. Armour Packing Co. v. United States, 153 Fed. 1, 17, 82 C. C. A. 135, 151, 14 L. R. A. (N. S.) 400. The reason why the decision and opinion in the Armour

Packing Company's Case that it was not necessary to plead the device by which the offense of rebating there charged was committed, does not in my opinion sustain the conclusion that it is unnecessary to plead the facts which constituted the attempt to defraud in this case, is, that the device was neither the offense charged nor an essential element of the offense charged in that case, while the attempt to defraud is the offense itself in this case, and hence the facts which constitute it are inseparable elements thereof. In the Armour Case this court said:

"The substance of this offense is not the device, but the solicitation or receipt of the concession and the transportation effected thereby. * * * The device whereby the receipt and transportation are obtained is not an essential element of the crime, and it is unnecessary to plead it in the indictment."

On the other hand, if the device had been the offense, or had been an essential element thereof, it would, in my opinion, have been necessary to plead it in that case. But the offense in that case was the rebating, and the indictment was sustained because, and only because, every essential element, all the facts which constituted that crime, "the names of the carriers that transported the property, the date and place of the delivery of the goods to the initial carrier and of the receipt of the concession by the shipper, a description of the specific articles shipped, the filed and published rate, the less rate at which the goods were transported, and the amount of the concession, the place of shipment, and the point of destination of the property and the route over which it was transported," were clearly and at large set forth in the indictment. The offense in this case is the attempt to defraud, and by the same mark it was indispensable to plead all its essential elements, all the ultimate facts, though undoubtedly not their details, which constituted the offense. By a pleading of those facts, and by such a pleading only, could the indictment be brought within the established rule that "it must portray the facts which the pleader claims constitute the alleged transgression so distinctly as to advise the accused of the charge which he has to meet and to give him a fair opportunity to prepare his defense, so particularly as to enable him to avail himself of a conviction or an acquittal in defense of another prosecution for the same offense, and so clearly that the court may be able to determine whether or not the facts there stated are sufficient to support a conviction." Armour Packing Co. v. United States, 153 Fed. 1, 17, 82 C. C. A. 135, 151, 14 L. R. A. (N. S.) 400. In Ledbetter v. United States, 170 U. S. 606, at page 609, 18 Sup. Ct. 774, at page 775 (42 L. Ed. 1162), the Supreme Court said:

"We have no disposition to qualify what has already been frequently decided by this court, that where the crime is statutory it must be charged with precision and certainty, and every ingredient of which it is composed must be clearly and accurately set forth, and that even in the cases of misdemeanors the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged. United States v. Cook, 17 Wall. 168, 174, 21 L. Ed. 538; United States v. Cruikshank, 92 U. S. 542, 562, 23 L. Ed. 588; United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135; United States v. Simmons, 96 U. S.

360. 24 L. Ed. 819; United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Pettibone v. United States, 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419; Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830."

The following declarations of the law upon this subject are extracted from the opinions of the Supreme Court in the cases which are cited and reaffirmed in the Ledbetter Case.

"No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment or implication, and the charge must be made directly and not inferentially, or by way of recital. * * * The doctrine invoked by the Solicitor General that it is sufficient in an indictment upon a statute to set forth the offense in the words of the statute does not meet the difficulty here. Undoubtedly the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense coming under the general description with which he is charged." United States v. Hess, 124 U. S. 483, 487, 8 Sup. Ct. 571, 573, 31 L. Ed. 516.

"A rule of criminal pleading, which at one time obtained in some of the circuits, and perhaps received a qualified sanction from this court in United States v. Mills, 7 Pet. 138, 8 L. Ed. 636, that an indictment for a statutory misdemeanor is sufficient if the offense be charged in the words of the statute, must, under more recent decisions, be limited to cases where the words of the statute themselves, as was said by this court in United States v. Carll, 105 U. S. 611, 612, 26 L. Ed. 1135, 'fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.' The crime must be charged with precision and certainty, and every ingredient of which it is composed must be accurately and clearly alleged." United States v. Cook, 17 Wall. 168, 174, 21 L. Ed. 538; United States v. Cruikshank, 92 U. S. 542, 558, 23 L. Ed. 588.

"It is an elementary principle of criminal pleading that, where the definition of an offense, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition, but it must state the species— it must descend to particulars.' 1 Arch. Cr. Pr. & Pl. 291. The object of the indictment is: First, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place and circumstances." United States v. Cruikshank, 92 U. S. 542, 558, 23 L. Ed. 588.

Because "attempt to defraud" is a generic term, because such an attempt is a conclusion of law made up of acts and intent, and because the facts which are claimed to constitute it must be set forth in the indictment with such reasonable particularity as will enable the court to decide whether they are sufficient in law to support a conviction, as will enable the defendants to prepare their defense and as will protect them from a second prosecution therefor, and the third count in this indictment in my opinion utterly fails to set forth those facts, or the essential elements which constitute the attempt to defraud, I am unable to concur in the view of the majority that this count was not demurrable. It does not seem to me to set forth facts constituting the generic crime alleged.

Nor have I been able to find in the record in this case any substantial evidence that either of the defendants attempted to defraud the

United States out of the $12 poundage tax on the 120 pounds of oleomargarine. There is evidence tending to show that they were manufacturing colored oleomargarine by mixing colored matter with white oleomargarine. But they could lawfully do that without defrauding or attempting to defraud the government out of the poundage tax. Even an intent at some future time to defraud is neither the fraud itself nor the attempt to defraud. The fraud could not be perpetrated in this case without either selling the 120 pounds, or removing it for consumption, or removing it for use, without paying the tax, and there is no evidence that either of these defendants attempted to do either of these things. The conclusion that they made such an attempt is a mere deduction from the proof that they were manufacturing colored oleomargarine—a deduction that it seems to me could not have been lawfully drawn by the jury for the purpose of convicting these defendants of a crime, because none of the acts proved against them was inconsistent with their innocence of an attempt to defraud the government of this poundage tax. And circumstantial evidence is insufficient to warrant a conviction in a criminal case unless it cannot be reconciled with the theory of innocence and it is such as to exclude every reasonable hypothesis but that of guilt of the offense charged. Vernon v. United States, 146 Fed. 121, 123, 76 C. C. A. 547, 549.